Robert T. HULMES, Plaintiff,

v.

HONDA MOTOR COMPANY, LTD., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc., Defendants.

HONDA MOTOR COMPANY, LTD., et al., Third Party Plaintiffs,

v.

Nicholas J. HULMES, Third Party Defendant.

Sherry HULMES, Plaintiff,

v.

HONDA MOTOR COMPANY, LTD., et al., Defendants.

HONDA MOTOR COMPANY, LTD., et al., Third Party Plaintiffs,

v.

Nicholas J. HULMES, Third Party Defendant.

Civil Action No. 93–2771.

United States District Court, D. New Jersey.

May 10, 1996.

Lewis M. Levin, Joseph R. Viola, Lewis M. Levin & Associates, Philadelphia, PA for Plaintiff, Robert T. Hulmes.

Jayne A. Piarulli, Michael A. Smerconish, Beasley, Casey & Erbstein, Philadelphia, PA, for Plaintiff, Sherry Hulmes.

Robert St.L. Goggin, Brian C. Dareff, Marshall, Dennehy, Warner, Coleman & Goggin, Marlton, N.J., for Defendants, Hon-

da Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc.

## OPINION

ORLOFSKY, District Judge:

■ Plaintiff, Robert Hulmes ("Hulmes"), filed this product liability action against defendants, Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc. (herein collectively referred to as "Honda"). Honda has moved for summary judgment based on New Jersey's entire controversy doctrine. The entire controversy doctrine is a rule of mandatory joinder, which gives rise to a species of claim preclusion unknown outside New Jersey. The doctrine requires the joinder of all claims and parties, whenever possible, in a single action and frequently operates in unpredictable ways to bar subsequent actions by parties who have failed to observe the doctrine in a prior litigation.

The question presented for this Court's resolution is whether a voluntary, but admittedly inadvertent,[1] dismissal "with prejudice" of a State court "John Doe" action,[2] in which only a fictitious defendant was named, one week after it was filed, and before the complaint was served or any discovery conducted, amounts to a "prior action" within the meaning of the entire controversy doctrine so as to bar this suit against a manufacturer of an allegedly defective product, not named or otherwise identified in the original "John Doe" complaint. This question is one of first impression in New Jersey. For the reasons which follow, this Court finds that the entire controversy doctrine does not apply in these circumstances. Accordingly, Honda's motion for summary judgment will be denied.

## I. Facts and Procedural History

On July 28, 1991, Hulmes was severely injured as the result of a collision which occurred while he was riding a three-wheeled, All–Terrain Vehicle ("ATV") designed and manufactured by Honda. The disputed facts and circumstances surrounding the accident and plaintiff's injuries are not material to Honda's motion for summary judgment.

Sometime prior to October, 1992, plaintiff retained Larry E. Coben, Esq. ("Coben"), then of the firm of Litvin, Blumberg, Matusow, & Young, in Philadelphia, to represent him. Sometime in 1992, Dr. Jeffrey C. Huston, who has been identified as one of plaintiff's expert witnesses in this trial, was hired, presumably by Coben, to prepare a report on the ATV, which he inspected on June 1, 1992. Honda's Reply Brief, exhibit B, at 1.

In November, 1992, Coben telephoned Michael A. Kaplan, Esq. ("Kaplan"), a shareholder in the New Jersey law firm of Tomar, Simonoff, Adourian and O'Brien (the "Tomar Firm"),[3] and asked him to file a "John Doe" complaint on behalf of Hulmes. Certification of Michael A. Kaplan, Esq. ("Kaplan Certif.") ¶ 2, attached as exhibit A to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Hulmes' Brief").

On December 30, 1992, the Tomar Firm, on behalf of plaintiff, Robert T. Hulmes, filed a "John Doe" complaint in the Law Division of the Superior Court of New Jersey in Gloucester County. Brief in Support of Motion for Summary Judgment on behalf of Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc. ("Honda's Brief"), exhibit B. This complaint, bearing Docket Number L–2893–92, was captioned

---

1. Certification of Michael A. Kaplan, Esq. ¶¶ 8–9, attached as exhibit A to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment; Certification of Andrew Brekus, Esq. ¶ 8, attached as exhibit B to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment.

2. New Jersey Court Rule 4:26–4 allows a plaintiff to file a complaint against a party using a ficti-

tious name "if the defendant's true name is unknown to the plaintiff," and plaintiff provides "an appropriate description sufficient for identification." *Id.*

3. The Tomar firm is now known as Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano.

"ROBERT T. HUMES (sic), vs. JOHN DOE, a fictitious name, Defendant." *Id.* In this complaint, defendant, "John Doe," was described as "the owner and operator of an all-terrain vehicle travelling in a generally westerly direction on West Hunterdon Avenue toward its intersection with Fairview Avenue in the City of Mantua, County of Gloucester, and State of New Jersey." *Id.* (Complaint ¶ 2).

One week later, on January 6, 1993, this action was dismissed "with prejudice" on the plaintiff's own notice of dismissal. *Id.* exhibit C. On the same day, January 6, 1993, the Tomar Firm filed a second "John Doe" action on behalf of Hulmes in the Law Division of the Superior Court in Gloucester County which was docketed as L–23–93. This second action, which bore the same caption as the first, now described "John Doe" as the "person, corporation, or other entity that was responsible for plaintiff's all-terrain vehicle rolling over." Exhibit C (Complaint ¶ 2) to Kaplan Certif., attached as exhibit A to Hulmes' Brief. No amendment of the first complaint (Docket No. L–2893–92) was ever offered to identify an actual defendant, and the complaint was never served on Honda or any other defendant.[4] Kaplan Certif. ¶ 5; Certification of Andrew Brekus, Esq., ("Brekus Certif.") ¶ 4, attached as exhibit B to Hulmes' Brief. The second "John Doe" complaint (Docket No. L–23–93) was subsequently dismissed without prejudice, some six months after the action in this Court was filed. Kaplan Certif. ¶ 10.[5]

It was not until after the first "John Doe" complaint had been filed in the Law Division that Kaplan realized, on reviewing the pleading, that it "misidentified the Johne (sic) Doe defendant." Kaplan Certif. ¶ 6. Kaplan assigned Andrew Brekus, an associate at the Tomar Firm at the time, to correct this oversight. *Id.* For some unexplained reason, Brekus opted not to amend the "John Doe" complaint filed on December 30, but chose instead to dismiss the first complaint and file a second one. Brekus Certif. at ¶ 9. According to Brekus, "when typed, the Notice of Dismissal indicated it was with prejudice. I did not realize this mistake." *Id.* ¶ 8. Brekus then signed Kaplan's name to the Notice of Dismissal and filed it. *Id.* ¶ 7. Kaplan confirms these facts, admitting that the characterization of the dismissal as "with prejudice" was "clearly a clerical mistake." Kaplan Certif. ¶ 8. Kaplan further asserts that there "was no reason for any dismissal to be filed on January 6, 1993 by Mr. Brekus except without prejudice." *Id.* ¶ 9.

On June 28, 1993, Hulmes filed his complaint in this Court. Subsequently, on July 27, 1993, plaintiff, Sherry Hulmes, filed her *per quod* action, which was consolidated with Hulmes' action pursuant to an Order entered by Judge Rodriguez on September 9, 1993. Since then, the parties have engaged in a protracted and often tumultuous regime of discovery in this Court, which is still proceeding.

On April 9, 1996, defendants filed their Notice of Motion for Summary Judgment based upon the entire controversy doctrine. Honda contends that the case filed by Hulmes in this Court is barred because plaintiff had the "opportunity" to join Honda in the original "John Doe" action filed in the Law Division on December 30, 1992 (Docket No. L–2893–92), and inadvertently dismissed with prejudice one week later, but failed to do so. Honda insists that the filing of the second "John Doe" suit in the Law Division, which correctly describes the vehicle manufacturer, is immaterial to the disposition of this motion. At oral argument, counsel for Honda acknowledged that its motion was based only on the first "John Doe" action, which was dismissed one week after it was filed. Honda's counsel candidly admitted that if the second "John Doe" action had been filed first, Honda would not have filed this motion, which is based exclusively on the

---

4. The driver of the other all-terrain vehicle involved in the incident was Nicholas Hulmes, plaintiff's brother, and a third-party defendant in the instant action.

5. At oral argument the Court was advised of the existence of a third action in the Law Division in

Gloucester County. This action, which according to counsel is on "inactive status," names the Honda defendants named in this case, as well as the dealership which allegedly sold the ATV to Hulmes. Transcript of Oral Argument, May 3, 1996, at 20–24.

entire controversy doctrine. Transcript of Oral Argument, May 3, 1996, ("Tr. of Oral Argument") at 6–8.

## II. Standard for Summary Judgment

■ A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Hersh v. Allen Products, Co.*, 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). The district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d. 1358, 1366 (3d Cir.1996).

■ For the purposes of this motion, the parties are in substantial agreement on the facts outlined above. Thus, this motion presents only questions of law and is ripe for summary adjudication. *Nation Wide, Inc. v. Scullin*, 256 F.Supp. 929, 932 (D.N.J.1966), *aff'd*, 377 F.2d 554 (3d Cir.1967).

## III. Standards for Deciding Unsettled Questions of State Law

The New Jersey Supreme Court has not addressed whether the entire controversy doctrine bars a second action when the first suit, a "John Doe" action, was inadvertently dismissed with prejudice one week after it was filed. Accordingly, this Court must predict how the Supreme Court of New Jersey would rule in this case. If New Jersey permitted federal courts to certify questions of state law to its Supreme Court, this question would be appropriate for such a certification procedure. *See Hakimoglu v. Trump Taj Mahal Assoc.*, 70 F.3d 291, 293 (3d Cir.1995); *see id.* part V, at 302–04 (Becker, J., dissenting, joined, in part V only, by Nygaard and Alito, JJ.) (describing the overwhelming satisfaction of federal judges with state certification procedures where they exist and urging New Jersey to adopt certification).[6] In attempting to predict how a state's highest court would decide an unresolved question of state law, a district court is guided by certain well established principles.

■ A district court sitting in diversity must look to the law of the state in which it sits to provide the rules of decision on issues of substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir.1993) (noting that federalism concerns prohibit federal courts from "judicial activism" in matters of state law). In making its prediction of state law, this Court is guided, but not bound, by the rulings of the lower New Jersey appellate courts, which may provide the best "indicia of how the state's highest court might decide" an issue. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981); *see also Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir.1991); *Butler v. Sherman, Silverstein & Kohl, P.C.*, 755 F.Supp. 1259 (D.N.J.1990). A district court may not disregard decisions of the intermediate state appellate courts, unless convinced by " 'persuasive data' " that the state's highest court might rule otherwise. *Fisher v. USAA Casualty Ins. Co.*, 973 F.2d 1103, 1105 (3d Cir.1992) (quoting *West v. AT & T*, 311 U.S. 223, 237, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940)).

■ In predicting a decision of the state's highest court, a federal district court may also consider all available legal sources, including the Restatements of the Law, treatises, law review commentaries and decisions from other jurisdictions. *See Pennsylvania Glass Sand*, 652 F.2d at 1167. In addition, the district court may look to "policies underlying the applicable legal doctrines and the doctrinal trends indicated by these policies. *Id. See also* 19 Charles A. Wright, et al., *Federal Practice and Procedure* § 4507, at 100–03 (1982). Decisions of the state's trial courts may also be considered to help to illuminate the subject. *See id.* at 96. In any event, it is improper for the district court to abstain from deciding an issue, even

6. As a result, at least in part, of *Hakimoglu*, the New Jersey State Bar Association's Board of Trustees will seek to sponsor legislation aimed at

adopting a certification procedure in New Jersey. 5 N.J.Law. 641, 649 (April 1, 1996).

when there is no state law to guide its prediction. *See id.* at 99.

## IV. Discussion

### A. The Evolution of the Entire Controversy Doctrine

■ The entire controversy doctrine has grown from a common-law rule, through its incorporation into the New Jersey Constitution of 1947,[7] and beyond, so that now it is "a mandatory rule for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." *Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 16, 560 A.2d 1169 (1989).[8]

■ The doctrine serves three interrelated objectives: "(1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 N.J. 310, 322, 662 A.2d 523 (1995) (citations omitted).

The entire controversy doctrine is not without its critics. Indeed, the Civil Practice Committee of the New Jersey Supreme Court has proposed the elimination of mandatory party joinder from the entire-controversy doctrine. The Committee concluded that "despite the conceptual appeal of the [entire controversy] rule, it has, as a matter of practice, created many more difficulties than it has resolved." 1994 Report of the Supreme Court Comm. on Civil Practice, *reprinted in,* 136 N.J.L.J. 581, 589 (Supp. Feb. 14, 1994). *See also,* Editorial, *Where Are the Numbers?,* 144 N.J.L.J. 437, 464 (April 29,

1996) (questioning whether statistical support exists for the proposition that the entire controversy doctrine promotes judicial efficiency); Dana Coleman, *Entire-controversy controversy: Panelists decry fallout from high court ruling,* 5 N.J.L. 825, 827 (April 22, 1996).

On August 1, 1995, the New Jersey Supreme Court decided a "quartet" of entire controversy cases which expanded the doctrine into territory where no doctrine had gone before. *See DiTrolio v. Antiles,* 142 N.J. 253, 662 A.2d 494 (1995) (entire controversy doctrine bars second action on a distinct legal theory when the first action was dismissed without prejudice following settlement); *Circle Chevrolet v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 662 A.2d 509 (1995) (entire controversy doctrine bars malpractice action against law firm and accountants when plaintiff's cause of action for professional negligence accrued during the pendency of earlier landlord-tenant litigation, notwithstanding that law firm defendants in the second action were actively representing plaintiff in the first action); *Mystic Isle,* 142 N.J. 310, 662 A.2d 523 (doctrine bars subsequent legal malpractice claim, even when first action was dismissed without prejudice as to one defendant); *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.,* 142 N.J. 336, 662 A.2d 536 (1995) (doctrine bars claims which could have been raised in prior action in out-of state federal forum). It is fair to say that the long range consequences of the "entire controversy quartet" are difficult to predict. Even before the release of the quartet, New Jersey's entire controversy doctrine was acknowledged as unique in its unwavering re-

---

7. For a discussion of the origins of the doctrine, see Kevin Haverty, Note, *The Entire Controversy Doctrine in New Jersey and the Nominal Party Exception: When is the Entire Controversy Not the Entire Controversy?,* 23 Rutgers L.J. 341, 344–49 (1992). *See also* William J. Volonte, Note, *The Entire Controversy Doctrine, A Novel Approach to Judicial Efficiency,* 12 Seton Hall L.Rev. 260 (1982).

8. As a result of the New Jersey Supreme Court's holding in *Cogdell,* in September, 1990, the entire controversy doctrine was incorporated into

New Jersey Court Rule 4:30A, which provides that:

> Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64–5 (foreclosure actions) and R. 4:67–4(a) (leave required for counterclaims or cross-claims in summary actions).

*See* Sylvia B. Pressler, *Rules Governing the Courts of the State of New Jersey, 1996 Edition,* cmt. to Rule 4:30A, at 1184.

quirement that all claims and all parties be joined in a single suit.[9]

## B. Plaintiff's Contentions

■ Hulmes argues that Honda is barred by the doctrines of waiver and estoppel from asserting the entire controversy doctrine at this juncture in the litigation. Hulmes' Brief at 6–11. The contention that Honda waived its rights by failing to plead the doctrine as an affirmative defense is plainly wrong; it was properly pled. *See* Answer at 7, Affirmative Defenses ¶ 16. Furthermore, none of the cases cited by counsel for Hulmes supports the proposition that a defendant may not move for summary judgment on one of its affirmative defenses several years into the litigation. Honda is not estopped from asserting the entire controversy doctrine.

■ Alternatively, counsel for Hulmes contends that the original "John Doe" suit was a "discovery action" only, and therefore is not encompassed within the entire controversy doctrine. This contention is also without merit. The cases cited by plaintiff in support of this proposition are wholly inapposite. *See, e.g., Davila v. Continental Can Co.,* 205 N.J.Super. 205, 500 A.2d 721 (App. Div.1985) (allowing plaintiff to join his employer in a "John Doe" products liability action, despite workers' compensation immunity, in order to discover evidence relating to the manufacturer of the machine on which plaintiff was injured). Plaintiff cites no authority, nor has this Court discovered any, which supports the proposition that a "John Doe" action may be filed purely to initiate discovery, and later dismissed, without running afoul of the strictures of the entire controversy doctrine.

■ Finally, counsel for plaintiff argues that application of the entire controversy doctrine would be inequitable, particularly since Honda was not prejudiced by the failure to join it in the December, 1992 suit. Whether or not Honda can demonstrate prejudice, the application of the entire controversy doctrine does not seem to depend upon a showing of actual prejudice to the party not joined in the previous action. *See, e.g., Circle Chevrolet,* 142 N.J. 280, 662 A.2d 509; *Mystic Isle,* 142 N.J. 310, 662 A.2d 523.

## C. Application of the Entire Controversy Doctrine to Plaintiff's First "John Doe" Complaint

■ It is far from clear that a "John Doe" action rises to the level of a prior adjudication so as to trigger the entire controversy doctrine. New Jersey Court Rule 4:26–4 allows a party who is unaware of the identity of a potential defendant to file a complaint naming a "John Doe" defendant, provided that a "description sufficient for identification" appears in the complaint.[10] The Rule specifically provides, however, that "[n]o final judgment shall be entered against a person designated by a fictitious name." No attempt was made to amend the first complaint to name an actual person, in place of the single "John Doe" defendant, in the one week which elapsed before the first complaint was inadvertently dismissed with prejudice. Therefore, on the facts of this case, no final judgment could possibly have been entered in the initial "John Doe" action.

9. *See, Mortgagelinq,* 142 N.J. at 350, 662 A.2d 536 (Pollock, J., dissenting) (citing Arthur F. Greenbaum, *Jacks or Better to Open: Procedural Limitations on Co–Party and Third Party Claims,* 74 Minn.L.Rev. 507, 562 n. 223 (1990)); *see also Coleman, supra,* 5 N.J.L. at 864 (citing Professor Allan R. Stein to the effect that New Jersey has "the broadest joinder rule in the nation").

10. Honda argues that Hulmes has abused the rule. Honda's Reply Brief at 9–11. Although Kaplan certifies that at the time the first "John Doe" suit was filed, he was unaware of any possible products liability claim against Honda, Kaplan Certif. ¶ 4, the record reflects that an expert, who had testified against Honda in prod-

ucts liability cases similar to this one, was retained by plaintiff, and completed preliminary investigations on plaintiff's behalf more than six months before Kaplan filed his John Doe action. Honda's Reply Brief, exhibit B, at 1. Whether Kaplan knew, or should have known, of Hulmes' cause of action against Honda, however, does not significantly advance the resolution of the issues presented by this motion. Nevertheless, the filing of the second "John Doe" complaint, a week after the first, describing a potential products liability defendant, suggests that the Tomar Firm had some reason to believe that Hulmes might have had a claim similar to the one he is now pursuing in this Court.

Moreover, at oral argument, counsel for both parties confirmed that they could find no New Jersey case in which a prior "John Doe" action had been held to bar a subsequent action based upon the entire controversy doctrine. Tr. of Oral Argument at 8, 27. The fact that there can be no "finality" to a judgment against a "John Doe" defendant suggests that the entire controversy doctrine was not intended to apply to these facts and circumstances.

■ "Like other legal doctrines ... the entire-controversy doctrine has its limits." *Mortgagelinq,* 142 N.J. at 350, 662 A.2d 536 (Pollock, J., dissenting). In the present case, Honda's motion explores the outer perimeters of the doctrine. Because the precise issue raised by Honda's motion is one of first impression in New Jersey, this Court must consider the peculiar facts of this case in light of the stated objectives of the entire controversy doctrine as articulated by the New Jersey Supreme Court, bearing in mind the legal principles to be applied by a district court sitting in diversity, when faced with a novel issue of state law.

### 1. Comprehensive and Conclusive Determination of a Legal Controversy

The application of the entire controversy doctrine to the facts of this case would not promote "the comprehensive and conclusive determination of a legal controversy." *Mystic Isle,* 142 N.J. at 322, 662 A.2d 523. Beyond the obvious conclusion that application of the doctrine in this case might very well bar forever a determination of the legal controversy between Hulmes and Honda,[11] the first objective of the doctrine is meant to prevent plaintiffs, who are, or should be, aware of a cause of action, from "deliberately

with[holding] their claims in the first action" and thereby fragmenting the litigation. *Mortgagelinq,* 142 N.J. at 341, 662 A.2d 536.

At oral argument, counsel for Honda suggested that the failure to name Honda in the first "John Doe" action might well be a part of a tactical litigation "strategy." Tr. of Oral Argument at 31. This court categorically rejects such a suggestion. It is not only unsupported by the record, it is fanciful. Whether this Court may impute to the Tomar Firm the knowledge of plaintiff's personal counsel, Coben, who apparently had hired an expert to investigate a products liability claim against Honda prior to December, 1992, both Kaplan and Brekus testify that they had no personal knowledge that such a products liability claim was viable. Kaplan Certif. ¶ 4; Brekus Certif. ¶ 4. Furthermore, it is difficult to imagine what counsel would have hoped to achieve by such a seemingly suicidal tactical litigation "strategy."

The entire controversy doctrine seeks to ensure that a party does not unfairly withhold some of his or her claims, so as to " 'render the pending litigation merely one inning of the whole ball game.' " *Kozyra v. Allen,* 973 F.2d 1110, 1112 (3d Cir.1992) (quoting *William Blanchard Co. v. Beach Concrete Co.,* 150 N.J.Super. 277, 294, 375 A.2d 675 (App.Div.1977)). To apply the doctrine to the facts of this case would end the game before the first pitch is thrown.

### 2. Achieving Party Fairness

■ In applying the entire controversy doctrine to any set of facts, it must be borne in mind that "[t]he Rules of Practice are not an end unto themselves, but a means of serving the ends of justice." *Viviano v. CBS, Inc.,* 101 N.J. 538, 550–51, 503 A.2d 296

---

11. Although this Court need not decide the issue, there are at least two distinct reasons why a ruling in favor of Honda on this motion might well leave the plaintiff without a remedy. First, if Hulmes were to return to the Superior Court, seeking to reopen the second "John Doe" action, which was dismissed without prejudice, in which the ATV manufacturer was properly named (Docket No. L–23–93), a ruling by this Court, favorable to Honda on this motion, would presumably be given preclusive effect by the State court, barring that action as well as the third action referred to in note 5, *supra.*

Second, if Hulmes knew, or should have known, during the pendency of the second State court "John Doe" action, of his potential cause of action for legal malpractice against the Tomar Firm, his failure to join the Tomar Firm might forever bar his malpractice claim against it based upon the entire controversy doctrine. *See Circle Chevrolet,* 142 N.J. 280, 662 A.2d 509; *Mystic Isle,* 142 N.J. 310, 662 A.2d 523. Moreover, it is likely that the Tomar Firm cannot be joined in the present action since joinder would destroy complete diversity of citizenship. Fed.R.Civ.P. 19(a).

(1986). Even though the entire controversy doctrine is widely recognized as the strictest rule of compulsory joinder in the nation, the Appellate Division of the New Jersey Superior Court would "not suggest the doctrine requires application regardless of the equity of an individual situation." *Burrell v. Quaranta*, 259 N.J.Super. 243, 612 A.2d 379 (App. Div.1992).

"The 'polestar of application of the rule is judicial 'fairness' " *DiTrolio*, 142 N.J. at 272, 662 A.2d 494 (quoting *Reno Auto Sales, Inc. v. Prospect Park Sav. and Loan Ass'n*, 243 N.J.Super. 624, 630, 581 A.2d 109 (App.Div. 1990)). The doctrine particularly focuses on fairness to "those sued in the second suit who were prevented from participating in the first." *Id.* at 272–73, 662 A.2d 494. Honda was only "prevented" from participating in the first suit by virtue of the fact that the suit was brought as a "John Doe" action. There is no unfairness in being "prevented" from participating as a defendant in a suit in which no defendant has participated.

■■■■ Honda repeatedly points to the fact that Hulmes' first "John Doe" action in the Law Division (Docket No. L–2893–92) was dismissed "with prejudice." Honda's Brief at 6–7. Counsel for Hulmes argues that the dismissal "with prejudice" was a mere oversight, there being no reason why Hulmes would have sought dismissal "with prejudice." Kaplan Certif. ¶ 8; Brekus Certif. ¶¶ 7–8. Honda cites *Velasquez v. Franz*, 123 N.J. 498, 507, 589 A.2d 143 (1991), for the proposition that dismissal "with prejudice" operates as an adjudication on the merits for purposes of claim preclusion.[12] *Id.* (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir.1972) (Aldisert, J.) holding that a "[d]ismissal with prejudice constitutes an adjudication on the merits as fully and completely as if the order had been entered after trial."

(in turn citing *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955))). *See* Honda's Brief at 6 n. 3. However, Honda was not a party to the first action, and it is nowhere asserted, nor could it be, that Honda was in privity with the driver of the other ATV involved in the accident. Therefore, claim preclusion does not bar the present action against Honda.

Nevertheless, Honda argues that the legal principles that define a valid, final judgment on the merits for purposes of claim preclusion are identical to those that define the contours of a "prior litigation" for purposes of applying the entire controversy doctrine. Honda's Brief at 6–7. Defendant cites no law to support this proposition, and this Court is unwilling to predict that the New Jersey Supreme Court would apply its entire controversy doctrine to bar subsequent litigation whenever a prior suit has been terminated by a dismissal "with prejudice."

■■■■ One New Jersey appellate court has recognized that: "If *res judicata* and collateral estoppel principles, which are predicated upon actual issue litigation, are inapplicable in [certain] circumstances, then, *a fortiori*, the entire controversy doctrine, predicated on litigation *which could have, but did not take place*, is inapplicable," *Cafferata v. Peyser*, 251 N.J.Super. 256, 262, 597 A.2d 1101 (App.Div.1991) (emphasis added). This statement is noteworthy, because it suggests that a higher standard must be met to apply the entire controversy doctrine than the standard applicable to claim preclusion. In other words, just because a dismissal with prejudice may act as a bar to relitigation when both parties were engaged in an earlier action, it does not follow that a dismissal with prejudice should automatically bar a second action when one party, the defendant, was

12. In order for the doctrine of *res judicata*, or claim preclusion, to bar a subsequent action, the following requirements must be met:
 (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Watkins v. Resorts Int'l Hotel & Casino*, 124 N.J. 398, 412, 591 A.2d 592 (1991). The term "on the merits," when used to describe one of the requirements of the prior judgment, has been called an "unfortunate phrase." 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4435, at 329 (1981).

not before the first tribunal. "Fairness to the plaintiff must also be considered." *Di-Trolio,* 142 N.J. at 273, 662 A.2d 494.[13]

 Furthermore, as Honda itself points out, a dismissal "without prejudice" can, under certain circumstances, trigger the application of the entire controversy doctrine to bar a second suit. *See DiTrolio,* 142 N.J. 253, 662 A.2d 494; *Mystic Isle,* 142 N.J. 310, 662 A.2d 523; Honda's Reply Brief at 17. Therefore, the characterization of the dismissal as "with prejudice," or "without prejudice," is clearly not dispositive of whether a second suit is barred by the entire controversy doctrine. As Justice Cardozo once observed in another context, the application of a rule should not be subject to the "tyranny of labels." *Snyder v. Massachusetts,* 291 U.S. 97, 114, 54 S.Ct. 330, 335, 78 L.Ed. 674 (1934). Justice Cardozo might well have been speaking about the entire controversy doctrine when he explained that "a court frames a rule which is general in form, though it has been wrought under the pressure of particular situations.... [And soon] another situation is placed under the rule because it is fitted to the words, though related faintly, if at all, to the reasons that brought the rule into existence." *Id.*

### 3. Judicial Economy

Defendants have pointed to no case, and this Court has found none, in which the entire controversy doctrine was applied to bar a second suit when the plaintiff in the first suit, a "John Doe" action, had neither served the complaint, conducted discovery, or attempted to amend the complaint to name an actual party, and the suit, moreover, had enjoyed a life span of less than one week.

In *Circle Chevrolet* and *Mystic Isle* the concerns raised were whether the plaintiff had enough time to become aware of his professional malpractice cause of action before the first suit terminated. In *Circle Chevrolet,* the New Jersey Supreme Court concluded that the plaintiff was aware of his cause of action for legal malpractice for over a year before and during the pendency of the prior action. *Circle Chevrolet,* 142 N.J. at 301–02, 662 A.2d 509. The prior litigation continued for over two years. *Id.* at 286–88, 662 A.2d 509. In *Mystic Isle,* the court stated that, not only was the plaintiff aware of his cause of action for professional malpractice during the pendency of the prior action, but that it "purposely ignored its obligation to assert its claim" in the earlier litigation. 142 N.J. at 332, 662 A.2d 523. The prior litigation continued for over three years. *Id.* at 318–20, 662 A.2d 523.

In *DiTrolio,* the New Jersey Supreme Court clearly stated that "the weight of the [judicial] economy factor lessens when a case is dismissed soon after the complaint is filed," but stressed that DiTrolio's prior lawsuit involved "one year of vigorous pre-trial litigation, including fairly extensive discovery." *DiTrolio,* 142 N.J. at 278, 662 A.2d 494. In the present case, the judicial economy factor "lessens" almost to the vanishing point, because the suit was dismissed only one week after it was filed, and no discovery was ever conducted.

Similarly, in *Mortgagelinq,* there was protracted litigation in the federal forum, and the New Jersey Supreme Court characterized plaintiffs' decision not to join the potential New Jersey defendants as a deliberate tactical decision "to fragment [the] litigation." *Mortgagelinq,* 142 N.J. at 338, 662 A.2d 536. Many cases support the conclusion that the entire controversy doctrine will bar a second suit when the prior suit has reached the merits of some, but less than all, of the plaintiff's claims, or when the prior suit has been prosecuted against some, but less than all, of the possible defendants. *See, e.g., Circle Chevrolet,* 142 N.J. 280, 662 A.2d 509, *DiTrolio,* 142 N.J. 253, 662 A.2d 494. Honda's argument that the entire controversy doctrine is intended to bar a second suit where the first suit does not reach the merits of *any* of plaintiff's claims against *any* possi-

---

**13.** Indeed, in speculating on circumstances such as those presented by this case, the New Jersey Supreme Court used conditional language in stating that; "in a diversity action brought in U.S. District Court in New Jersey against parties omitted from a prior state court action in New Jersey, the claims against the omitted parties *might* be barred." *Mortgagelinq,* 142 N.J. at 347 n. 4, 662 A.2d 536 (emphasis supplied).

ble defendant finds no support in the rationale which gave birth to the concept of mandatory joinder.

While the contours of the entire controversy doctrine are admittedly difficult to discern, I cannot conclude that the New Jersey Supreme Court would apply the doctrine to the facts of this case. To do so would not promote any of the doctrine's three objectives articulated by the New Jersey Supreme Court in *Mystic Isle*, 142 N.J. at 322, 662 A.2d 523, and would transform what began as a relatively simple rule of mandatory joinder into an instrument of injustice and confusion.

Accordingly, this Court concludes that the result which Honda urges would dislodge the entire controversy doctrine from its jurisprudential foundations and turn it into a trap for the wary and the unwary alike. *Cf. Cafferata*, 251 N.J.Super. at 263, 597 A.2d 1101. For the reasons set forth above, Honda's motion for summary judgment, based upon New Jersey's entire controversy doctrine, will be denied. The court will enter an appropriate order.

### ORDER

This matter having come before the Court on May 3, 1996, on the motion of defendants, Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc., for summary judgment, based upon New Jersey's entire controversy doctrine, Lewis M. Levin, Esq. and Joseph Viola, Esq., of Lewis M. Levin & Associates, appearing on behalf of the plaintiff, Robert T. Hulmes, and Robert St.L. Goggin, Esq. and Brian C. Dareff, Esq., of Marshall, Dennehy, Warner, Coleman & Goggin, appearing on behalf of defendants; and,

The Court having considered the oral argument of counsel, as well as the briefs, depositions, certifications and affidavits on file, for the reasons set forth in this Court's OPINION, filed concurrently with this ORDER,

It is on this 10th day of May, 1996, ORDERED that defendants' motion for summary judgment based upon New Jersey's entire controversy doctrine is DENIED.