

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-1997

# Venuto v. Witco Corp

Precedential or Non-Precedential:

Docket 96-5104

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Venuto v. Witco Corp" (1997). *1997 Decisions.* Paper 144.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/144

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5104

RALPH VENUTO, INDIVIDUALLY; AUTOMOTIVE
MANAGEMENT SYSTEMS, INC., A New Jersey
Corporation; and LIGHTNING LUBE, INC., T/A LASER
LUBE, A New Jersey Corporation

v.

WITCO CORPORATION; AVIS INCORPORATED; AVIS
SERVICE, INC.; AVIS LUBE, INC.; and AVIS
ENTERPRISES, INC.

RALPH VENUTO and AUTOMOTIVE MANAGEMENT
SYSTEMS, INC.,
Appellants

On Appeal from the United States District Court
for the District of New Jersey

D.C. No. 89-2841

Argued February 4, 1997

Before: STAPLETON and MANSMANN, Circuit Judges,
and POLLAK, District Judge*

(Filed June 30, 1997)

_____

*Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

Alan J. Davis (argued)
Ballard, Spahr, Andrews & Ingersoll
1735 Market Street, 51st Floor
Philadelphia, PA 19103
 Attorneys for Appellants Venuto
 and Automotive Management
 Systems, Inc.

Ronald S. Rolfe (argued)
Cravath, Swaine & Moore
825 Eighth Avenue
Worldwide Plaza
New York, NY 10019-7415

John G. Gilfillan, III
Carella, Byrne, Bain, Gilfillan,
Cecchi, Stewart & Olstein
6 Becker Farm Road
Roseland, NY 07068
 Attorneys for Appellee Witco Corp.

**OPINION OF THE COURT**

POLLAK, <u>District Judge</u>.

This appeal from a decision of the District Court for the District of New Jersey presents the question whether the second of two closely related diversity suits brought against the same defendant may be maintained. The answer to that question turns on what, if any, collateral consequences flow from the fact that, in the first suit, the district court denied plaintiff's motion to join, as additional parties plaintiff, the individual and the corporation that subsequently initiated the second suit. Relying both on res judicata principles and on New Jersey's entire controversy doctrine, the defendant moved to dismiss the second suit. The district court found the entire controversy doctrine inapplicable, but concluded that res judicata principles were applicable and mandated dismissal. Our review of the procedural history of these linked cases yields the following conclusions: we agree with the district court's entire controversy analysis but disagree with its res judicata analysis; accordingly, we reverse the district court's judgment dismissing the second suit.

2

I.

In order to explicate the issues posed by this appeal it will be necessary to examine the procedural history of these two suits in some detail. Plaintiff-appellants in the case at bar -- the second of the two suits -- are Ralph Venuto and Automotive Management Systems, Inc. ("AMS"). Venuto is sole shareholder and president of Lightning Lube, Inc. ("Lube"), a franchisor of quick-oil-change businesses. Venuto is also sole shareholder and president of AMS. AMS operated some of Lube's franchises, and both AMS and Venuto obtained sites for Lube's other franchisees, acting as either landlord or loan guarantor.1 Defendant-appellee in the case at bar is Witco Corporation, Lube's motor oil supplier.

In 1987, Lube brought a diversity suit ("Lube I") in federal court in New Jersey against Witco.2 The dispute now before this court had its origins in 1988, when Lube moved to amend its Lube I complaint by, among other changes, adding Venuto and AMS as additional plaintiffs. Witco

_____

1. According to the original complaint in the case at bar, AMS is Lube's parent, with the two corporations sharing a principal place of business. The first amended complaint, however, (1) makes no mention of an AMS-Lube parent-subsidiary relationship, and (2) states that AMS's principal place of business is Venuto's residence.

2. The gravamen of Lube's claim in Lube I was that Witco, acting through a division (Kendall Refining Co.), had attempted to destroy Lube. On appeal, this court, speaking through Judge Greenberg, described that case as follows:

Lightning Lube accused Witco of breaching its supply agreement and destroying Lightning Lube's relationship with its franchisees to benefit a competing quick-lube business that Witco had started with Avis Services, Inc. (Avis). Witco's actions allegedly caused Lighting Lube's existing franchisees either to abandon it or to hold back payment of royalty fees and resulted in large numbers of prospective franchisees never opening Lightning Lube centers. As a result, Lightning Lube lacked the cash flow necessary to continue operating and its owner, Ralph Venuto, was forced to sell its assets to another company for far less than their true worth.

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1161 (3d Cir. 1993). In that suit, Venuto and AMS were joined by Witco as third-party defendants.

3

opposed the motion to amend, arguing that the motion was filed over two months after the deadline for amending the pleadings had passed and that the additional claims would greatly prolong discovery.

At a hearing on the motion, the parties and then-Magistrate Judge Simandle,3 who was overseeing pretrial proceedings on behalf of Judge Rodriguez, discussed at length the consequences of a denial of Lube's motion to amend. Lube's then-counsel, Steven M. Kramer, asked "What good it is to the judicial system to force me today, before I leave the courtroom[,] to take the amended complaint, tear it off, put a summons in front of it and file it downstairs for a second lawsuit?" App. 306. Witco's then-counsel, Benjamin D. Leibowitz, responded shortly thereafter, "I'd say, yes, Mr. Kramer, go downstairs and file that other complaint," arguing that the addition of the new parties would prolong already difficult and protracted discovery. App. 309. Mr. Leibowitz later observed that Mr. Kramer could "throw rocks in both courts at us, and he's not going to lose anything by the other complaint not being tied into this action because the claims he's going to make there, presumably, would be whatever they are." App. 314. Judge Simandle then confirmed that Mr. Leibowitz meant what he said:

THE COURT: Now, a moment ago you argued that your your [sic] client at this point would prefer at this point to defend second [sic] lawsuit. Mr. Kramer could go to the office and file on behalf of his client, which contains each and every count, and you don't dispute that?

MR. LEIBOWITZ: I don't dispute it.

THE COURT: Why would that serve your client's interests? Or was that more of a rhetorical argument?

App. 320-21. Mr. Leibowitz's lengthy response included the following two statements:

Listen, Mr. Kramer will have the benefit of thefirst

_____

3. In 1992, Judge Simandle became a Judge of the United States District Court for the District of New Jersey.

4

case and second case, if he losses [sic], he's going to be able to go before the jury, looking, res ajudicata, a judgment was entered against Kendall Refining Company because it did this and here's the complaint. Then how much work is he going to have to do? If he has a complaint for bad faith, that will make this case. It's even more advantageous for Mr. Kramer to get this case over with and to have a second case.

App. 324.

And when we get this case over, Mr. Kramer is either going to skate into a second case with a jury award and he's going to say, see, here's their bad faith, and it's going to reduce a lot of work, or we're going to go in there, and he's [sic] going to say, you had nothing then and you don't have anything now, and the disposition of this case, as it stands now can proceed more expeditiously, and will in fact directly affect the outcome of that second case.

There's no question that the issues that are subject to res ajudicata are going to be res ajudicata in the second case. Under the circumstances, what we're saying is Mr. Kramer might be well advised. I don't know what the statute of limitations is, or if he has a statute of limitations problem, to wait for the outcome of this case, and the discovery from this case, the parties could stipulate to be used in the other case, to the extent that it becomes relevant in the other case.

App. 327-28.

Judge Simandle later issued a letter opinion and order granting the motion to amend in part but denying the portion of the motion seeking to add Venuto and AMS as plaintiffs. He reasoned that Lube had delayed too long without explanation in moving to amend, and that introducing additional plaintiffs and claims would unduly complicate the case given the amount of discovery already completed. The order specifically provided, however, that the denial was "without prejudice." Judge Simandle later denied Lube's motion for reconsideration.

Shortly thereafter, Venuto and AMS (hereinafter together

5

"Venuto") filed the complaint against Witco in the instant case (which we shall call "Lube II"). 4 Lube II was assigned to Judge Rodriguez, the judge presiding over Lube I. Judge Rodriguez then affirmed Judge Simandle's denial of Lube's motion for reconsideration in Lube I, and stayed any action in Lube II pending the outcome of Lube I.

Lube went on to win a $61.5 million jury verdict from Witco in Lube I, $50 million of which consisted of punitive damages. The district court struck the $50 million punitive damage award and reduced the compensatory damages award to approximately $9.5 million. This court affirmed. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993).

After Lube I was decided on appeal, the district court lifted the stay in Lube II for the purpose of allowing Venuto to file his first amended complaint and allowing Witco to file a motion to dismiss. Witco's motion to dismiss asserted that the action was barred by (1) New Jersey's entire controversy doctrine and (2) res judicata. Because both sides relied on materials outside the pleadings, the court treated Witco's motion as a motion for summary judgment under Federal Rule of Civil Procedure 56.

The district court held that the action was not barred by the entire controversy doctrine. The court reasoned that Judge Simandle might have "intended to permit the second action in light of the defendant's apparent support of a second action," thus apparently preserving Venuto's claims for purposes of the entire controversy doctrine.

The district court went on to conclude that Lube II was nonetheless barred by res judicata -- which we understand to mean claim preclusion, as distinct from issue preclusion.5

_____

4. Lightning Lube, Inc., was originally a plaintiff in Lube II, but was dropped as a party plaintiff in the First Amended Complaint, filed in 1994.

5. The term "res judicata" has both a broad and a narrow meaning. Narrowly, in the sense evidently used by Judge Rodriguez, it refers only to claim preclusion. Our use of the term in this opinion likewise relates only to the claim preclusion aspect of res judicata doctrine. However, the preferred usage of the term encompasses both claim and issue

6

The court determined that Venuto was in privity with Lightning Lube, the plaintiff in Lube I. It then compared the counts in the Lube II amended complaint with the transactions at issue in Lube I, and concluded that they were based on the same "cause of action." With these two elements, and the uncontested fact that Lube I was decided on the merits, the court concluded that Lube II was barred by res judicata.6

Venuto now appeals this decision. The district court had jurisdiction pursuant to 28 U.S.C. § 1332; we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the district court's application of res judicata rules and the entire controversy doctrine is plenary. See Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 962 (3d Cir. 1991).

II.

We turn first to whether the district court properly determined that Venuto's claims are barred by res judicata. In Lubrizol, this court had occasion to discuss the question whether federal or state res judicata law governs successive diversity actions, but we declined to decide the issue "because our holding would be the same under both federal and state law." Lubrizol, 929 F.2d at 963. In this case as well, we find that the same result would be arrived at under federal and state res judicata law, and therefore we once again need not decide the choice of law question.7

_____

preclusion. See, e.g., Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984); 18 Wright, Miller & Cooper, Federal Practice and Procedure, § 4402, at 8 (1981). Issue preclusion, or collateral estoppel, is not an issue in this case as presented on appeal, but may be an issue on remand. See text accompanying note 13, infra.

6. The court also considered and rejected Venuto's argument that Witco should be judicially estopped from pleading res judicata because of its statements to Judge Simandle at the hearing on Lube's motion to amend. The court noted that Witco's counsel had referred to res judicata and had observed that "Mr. Kramer might be well advised." The court concluded that "[b]ecause there was no misrepresentation by Witco with regard to the res judicata defense, it is entitled to assert it."

7. Since Lubrizol, this court has on one occasion applied state res judicata law to successive diversity actions. See Collins v. E.I. DuPont de

7

The district court concluded that Witco had established the elements necessary for a res judicata defense. We assume that the district court's findings were correct. Nonetheless, because Judge Simandle expressly preserved Venuto's and AMS's claims for a future action through denying the motion to amend "without prejudice," we will reverse.

Venuto relies on the Restatement (Second) of Judgments § 26, as well as federal and New Jersey case law. The Restatement provides as follows:

(1) When any of the following circumstances exists, the general rule of § 24 [the Restatement's general rule prohibiting claim splitting] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action . . . .

Restatement (Second) of Judgments § 26 (1982). The commentary to subsection (1)(b) provides, in relevant part, that

[a] determination by the court that its judgment is "without prejudice" (or words to that effect) to a second action on the omitted part of the claim, expressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the second action.

_____

Nemours & Co., 34 F.3d 172, 176 (3d Cir. 1994). This court has also applied "the law of the adjudicating state [i.e., the Virgin Islands]" when a prior action was brought in the District Court of the Virgin Islands under both federal and Virgin Islands law. See Huck ex rel. Sea Air Shuttle Corp. v. Dawson, 106 F.3d 45, 48 (3d Cir. 1997), petition for cert. filed, 65 U.S.L.W. 3755 (U.S. May 1, 1997) (No. 96-1741). But those opinions did not discuss the choice of law question, and we therefore regard the question as still an open one.

8

<u>Id.</u> § 26 cmt. b.8

Although this court has not previously had occasion to
address whether, as a matter of federal res judicata law, a
court's decision to exclude a claim "without prejudice"
preserves the claim for a second action, several other
circuits have addressed the issue. Each of these courts has
permitted the second action. <u>See Guzowski v. Hartman</u>, 849
F.2d 252, 255 (6th Cir. 1988); <u>Blackwelder v. Millman</u>, 522
F.2d 766, 773 (4th Cir. 1975); <u>see also King v. Provident
Life & Accident Insurance Co.</u>, 23 F.3d 926, 929 (5th Cir.
1994) (reversing a res judicata determination when the first
court had expressly reserved certain claims); <u>Stolberg v.
Trustees for the State Colleges of Connecticut</u>, 541 F.2d 890,
893 (2d Cir. 1976) ("If the underlying judgment had
explicitly provided that [a particular] issue had not been
litigated and the defendants were not precluded from
raising it, there would be no question" that res judicata
would not bar a second suit.); <u>cf. Torres v. Rebarchak</u>, 814
F.2d 1219, 1225 (7th Cir. 1987) (concluding that Illinois
would apply the position of the Restatement § 26 when
some claims in the first suit had been dismissed "without
prejudice").9

_____

8. Professors Wright, Miller, and Cooper share the Restatement view that
the first court reviewing a claim has at least some power to determine
the preclusive effects of its judgments:

Despite the general rule that a court cannot dictate preclusion
consequences at the time of deciding a first action, it should have
power to narrow the ordinary rules of claim preclusion. A judgment
that expressly leaves open the opportunity to bring a second action
on specified parts of the claim or cause of action that was advanced
in the first action should be effective to forestall preclusion.

18 Wright, Miller, and Cooper, <u>Federal Practice and Procedure</u>, § 4413, at
106 (1981 & Supp. 1997).

9. The only court of appeals opinion to the contrary that we have
identified is one that was decided on the basis of state law; moreover,
the case arose in an unusual procedural setting not present here. In
<u>Abramson v. Harbor Island Marina, Inc.</u>, 816 F.2d 975 (4th Cir. 1987), a
state court, after a bench trial regarding a lease dispute, had declined to
award specific performance or damages for out-of-pocket expenses, but
had awarded the return of the lessee's deposit," `without prejudice to the

9

Witco responds with three arguments why Venuto's claims should be barred by res judicata. We think that none of these arguments has merit. First, Witco argues that permitting Venuto to bring his claims after the motion to amend was denied for untimeliness would reward delay. We need not fear that applying the Restatement rule will reward delay: if a district court concludes that a litigant has unduly delayed, it can -- and, presumably, ordinarily will -- deny a motion to amend "with prejudice." Here, however, despite the untimeliness of the motion, Judge Simandle chose to deny the motion "without prejudice."

Witco next argues that the denial of the motion to amend was superseded by the final judgment in Lube I. It notes especially that "[n]othing about the final judgment in Lube I was `without prejudice' to any rights Lube or its privies may have had." This argument is also meritless. Witco overlooks the established rule that interlocutory orders, such as the order denying the motion to amend without prejudice, merge into the final judgment. See, e.g., In re Westinghouse Securities Litigation, 90 F.3d 696, 706 (3d Cir. 1996). In issuing its final judgment, a court need not review all of its interlocutory orders and expressly reaffirm their continuing vitality.

Finally, Witco argues that Judge Simandle's denial of Lube's motion to amend was not an express reservation of Venuto's claims, and hence did not fall within the scope of § 26(1)(b) of the Restatement. Witco argues that Judge Simandle's use of the term "without prejudice" was only intended to preserve Lube's opportunity to move to amend its complaint at a later time, if discovery proved to be more lengthy than anticipated. This interpretation strains credulity. It is highly unlikely that Judge Simandle, after

_____

right of either party to sue the other for damages in a Court of law.' " Id. at 976. The Fourth Circuit, applying Maryland law, refused to permit a second action "where a plaintiff has prayed for damages as part of his relief and has attempted to prove his damages at trial and where the trial judge has found the proof of some damages insufficient and has entered an award of other damages." Id. at 977. Needless to say, Venuto has not yet had a trial nor has he been awarded partial damages on his claims.

10

denying the motion to amend because the motion was untimely and because granting it would unduly delay resolution of Lube I, intended to indicate that he would entertain a second motion to amend at a later time. Rather, it seems clear that Judge Simandle intended to permit Venuto and AMS to file their claims in a separate suit, as had been discussed at the argument on the motion.

We find the logic of § 26(1)(b) of the Restatement to be persuasive. As Professors Wright, Miller, and Cooper have reasoned,

An order by the first court that its judgment does not preclude a second suit on specified parts of the claim or cause of action advanced in the first suit may preserve valid grounds of recovery without undue violence to the values of res judicata. The express reservation notifies the defendant that repose has not yet been achieved. The plaintiff may have a substantially better opportunity to prove the reserved claim, or to determine that it is not worth litigating. For that matter, the defendant may also prove better able to meet the unexpected theory in a second suit.

18 Wright, Miller, and Cooper, Federal Practice and Procedure, § 4413, at 107 (1981).

In finding that logic applicable to the case at bar, we note that this is not an instance in which the court's use of the phrase "without prejudice" was inadvertent. Compare Hulmes v. Honda Motor Co., Ltd., 924 F. Supp. 673 (D.N.J. 1996) (refusing to find a second action barred by the entire controversy doctrine, although a prior action had been dismissed "with prejudice," in part because the phrase had been used inadvertently). Judge Simandle and Witco's counsel explicitly discussed the possibility of a second action, and Witco's counsel stated that "Mr. Kramer will have the benefit of the first case and second case" and "he can throw rocks in both courts at us." In these circumstances, Judge Simandle appropriately exercised his discretion to permit Venuto to file a second action. We

11

conclude that, consonant with the federal cases cited above, Venuto's claims are not barred by res judicata.10

We reach the same result applying state law. To the extent that New Jersey retains its own res judicata law, separate from the entire controversy doctrine,11 it likewise allows a second suit to be brought on a claim if thefirst court dismissed the claim "without prejudice." In Woodward-Clyde Consultants v. Chemical and Pollution Sciences, Inc., 523 A.2d 131 (N.J. 1987), the New Jersey Supreme Court held that a dismissal of a counterclaim was without prejudice, and therefore assertion in a second suit of the claim put forward in the dismissed counterclaim was not precluded by the entire controversy doctrine. The court introduced its analysis as follows:

A dismissal without prejudice is not an adjudication on the merits and does not bar reinstitution of the same claim in a later action. Malhame v. Borough of Demarest, 415 A.2d 358 (N.J. Super. Ct. App. Div. 1980) (quoting Christiansen v. Christiansen, 134 A.2d 14 (N.J. Super. Ct. App. Div. 1957). Plaintiff contends, however, that the institution of a subsequent action violates the entire controversy doctrine. We disagree.

523 A.2d at 135 (citations edited). One of the cases cited, Christiansen v. Christiansen, involved a dismissal of one claim from an earlier action "without prejudice," and an argument that this claim was barred in a second action because of res judicata. The Christiansen court stated that

_____

10. Because we rely on § 26(1)(b) of the Restatement, and on cases applying its logic, we need not determine whether the statements of Witco's counsel at the Lube I hearing on the motion to amend the complaint constitute acquiescence under § 26(1)(a) of the Restatement.

11. As we noted in Lubrizol, 929 F.2d at 965, New Jersey appears to retain a res judicata doctrine apart from the entire controversy doctrine. See Culver v. Insurance Company of North America, 559 A.2d 400, 404-06 (N.J. 1989) (explicating res judicata law). The New Jersey Supreme Court has noted, however, that the entire controversy doctrine "attempts to avoid the delay, waste and expense of fragmented litigation" and that "[t]o this extent, the entire controversy doctrine is wholly consistent with the doctrine of res judicata." Id. at 406.

12

[a] dismissal without prejudice is comparable to a nonsuit under the former practice at law. It adjudicates nothing. Another action may be instituted and the same facts urged either alone or in company with others as the basis of a claim for relief.

134 A.2d at 18 (citations omitted). The Christiansen court therefore concluded that the claim was not barred by res judicata.

It therefore seems plain that New Jersey courts recognize that a dismissal of a claim without prejudice removes the claim from a res judicata bar. Because both New Jersey and federal law are in agreement that res judicata should not bar Venuto's suit, the district court's ruling on this point was in error.

III.

Witco argues that, even if this court concludes that the district court erred on the res judicata issue, it should nonetheless affirm on the basis that Venuto's claims were barred by the entire controversy doctrine.12 The entire

_____

12. We note that the considerations that would argue for the application of federal res judicata law in successive diversity actions would appear to argue with equal force that the entire controversy doctrine -- a creature of state law -- should not be held applicable in successive diversity suits. However, as already noted, this court has not yet had occasion to decide whether federal or state res judicata law applies in such situations. See in this connection Judge Irenas's thoughtful opinion in Fioriglio v. City of Atlantic City, -- F. Supp. --, 1997 WL 249234 (D.N.J. May 6, 1997).

The New Jersey Supreme Court appears to have held that federal res judicata law governs a second court's actions when the first action was brought in federal court, see Watkins v. Resorts Int'l Hotel and Casino, Inc.. 591 A.2d 592. 598 (N.J. 1991) ("the preclusive effect of the judgment is a function of the procedures of the federal court that rendered it"); in Watkins, however, thefirst action had been a federal-question and not a diversity action. The New Jersey court has also stressed that New Jersey courts' application of the entire controversy doctrine to bar a state court action after a previous suit was brought in federal court is not binding on federal courts, stating that "our threshold is not a barrier elsewhere." Mortgagelinq Corp. v. Commonwealth Land

13

controversy doctrine is codified in New Jersey Rule Governing Civil Practice 4:30A. The New Jersey Supreme Court has recently summarized the doctrine as follows:

The fundamental principle behind the inclusion policy of the entire controversy doctrine is that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in the litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.

. . . .

The objectives behind the doctrine are threefold: (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation.

The doctrine has evolved over time through the common law. . . . The doctrine was . . . extended to include all affirmative claims that a party might have against another party, including counterclaims and cross-claims, as well as all parties with a material interest in the controversy, i.e., those who can affect or be affected by the judicial outcome of the controversy. . . . In essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation. . . .

 . . . It is for [sic] trial court to determine whether or not joinder is appropriate in a given case, and thus litigants should be compelled to bring all actions at one

_____

Title Ins. Co., 662 A.2d 536, 542 (N.J. 1995). See generally Stephen B. Burbank, Where's the Beef? The Interjurisdictional Effects of New Jersey's Entire Controversy Doctrine, 28 Rutgers L.J. 87 (1996); Rochelle Cooper Dreyfuss & Linda J. Silberman, Interjurisdictional Implications of the Entire Controversy Doctrine, 28 Rutgers L.J. 123 (1996).

14

time. A trial court is empowered to segregate different claims to assure manageability, clarity and fairness. A plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later.

Mystic Isle Development Corp. v. Perskie & Nehmad, 662 A.2d 523, 529-30 (1995) (citations omitted); see also Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 885-86 (3d Cir. 1997) (summarizing the entire controversy doctrine).

As noted above in our discussion of res judicata, the New Jersey Supreme Court held in Woodward-Clyde that a court's dismissal of a claim "without prejudice" authorizes a second claim, notwithstanding the entire controversy doctrine. However, in Mystic Isle the New Jersey Supreme Court somewhat tightened the entire controversy doctrine.

In Mystic Isle, the court held that a second suit against four defendants was barred by the entire controversy doctrine, even though the first court's dismissal of the first suit against one of the four defendants had been "without prejudice." The court first distinguished Woodward-Clyde, stating that "it is the party's original compliance with the doctrine [by presenting all its claims to the trial court], rather than the absence of a conclusive determination of a claim, that ensures preservation of that claim." 662 A.2d at 534.

The Mystic Isle court went on to note that

[i]n certain circumstances, especially where a plaintiff manipulates the judicial system in order to fragment litigation, the principles underlying the entire controversy doctrine may mandate that a suit be barred even though it stems from the dismissal of a prior action without prejudice.

Id. (quoting Restatement (Second) of Judgments § 19 cmt. a (1982)). In that case, the plaintiff had "deliberately contrived to have one claim dismissed in the [first] action in order to circumvent the preclusive effect of the entire controversy doctrine on its subsequent . . . claim," id. at 535; because of this "manipulat[ion] of the judicial system," the plaintiff's claim was barred.

15

We do not find the case at bar to be the sort of case that should, in the words of <u>Mystic Isle</u>, be"barred even though it stems from the dismissal of a prior action without prejudice." The major focus of the entire controversy doctrine is to bring all claims before the trial court for disposition in one proceeding; once all claims are put forward, the "trial court has the discretion to structure the litigation to assure efficient administration, clarity and fairness." <u>Id.</u> at 534. Here, the plaintiff in the first suit complied with the dictates of the entire controversy doctrine and undertook to present all claims for the court's decision on how best to structure the litigation. The court then decided -- contrary to the plaintiff's express preference -- that the claims should be heard in separate suits; no plaintiff "manipulation of the judicial system" occurred. Therefore, the ruling of the district court in the present case that this second suit is not barred by the entire controversy doctrine was correct.

IV.

We conclude that Venuto's and AMS's claims against Witco are not barred by the claim preclusion aspect of res judicata or by the entire controversy doctrine. We note that another aspect of res judicata -- namely, issue preclusion or collateral estoppel -- may be applicable to some or all of Venuto's and AMS's claims (and, conceivably, to some or all of Witco's defenses),13 but we leave these matters to the district court. The judgment of the district court is reversed and the case remanded for further proceedings.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>
_____

13. Witco's counsel was evidently referring to issue preclusion at the hearing on Lube's motion to amend its complaint, when he stated that "[t]here's no question that the issues that are subject to res ajudicata are going to be res ajudicata in the second case." App. 328. <u>See also</u> Mr. Leibowitz's arguments quoted <u>supra</u> at page 5.

16