WOODWARD–CLYDE CONSULTANTS v. CHEMICAL AND
POLLUTION SCIENCES, INC., ETC.

June 27, 1986.

Argued November 17, 1986—Decided April 9, 1987.

*Terence P. Corcoran* argued the cause for appellant (*Corcoran and Higgins*, attorneys).

*Lee W. Shelly* argued the cause for respondent (*Foley, Shelly & Niemann*, attorneys).

The opinion of the Court was delivered by

POLLOCK, Justice.

This appeal requires us to decide whether a dismissal of a counterclaim for failure to comply with a discovery order was with or without prejudice and whether the dismissal violates the entire controversy doctrine. The Law Division's order recited that the counterclaim is "dismissed for failure to comply" with an earlier order directing the defendant to make discovery. In an unreported decision, the Appellate Division assumed that the counterclaim was dismissed with prejudice, modified the dismissal to one without prejudice, and affirmed. We granted certification, 104 *N.J.* 454 (1986), and now modify and affirm the judgment of the Appellate Division. We conclude that the order of the Law Division, although it did not so state, was entered pursuant to Rule 4:37-2(a) for defendant's failure to comply with "an order of court" and, in the absence of a specification to the contrary, was without prejudice. We conclude further that the defendant did not violate the entire controversy doctrine by subsequently instituting an indepen-

dent action asserting the same claims as those asserted in its counterclaim.

## I

Defendant, Chemical and Pollution Sciences, Inc., retained plaintiff, Woodward-Clyde Consultants, as an expert in a civil action instituted by the New Jersey Department of Environmental Protection (DEP) against defendant, alleging that defendant spilled toxic wastes on its property in Old Bridge, New Jersey. Plaintiff was to evaluate the merits of the DEP claim and to testify on defendant's behalf at trial. Accordingly, plaintiff tested groundwater samples taken from wells it installed on defendant's premises to determine the extent of contamination, if any, caused by defendant. From tests performed on those samples, plaintiff concluded that defendant was not the source of the contamination. Shortly before June 15, 1981, the date of the trial of the DEP action, however, plaintiff learned that on nights preceding the days on which plaintiff took its samples, defendant's employees had flushed the wells with fresh water to conceal the contamination. When defendant failed to comply with plaintiff's request for either a full disclosure of the facts to all parties and the court or a new series of tests, plaintiff withdrew as an expert. The trial proceeded without plaintiff's services, and on July 31, 1981, the Law Division entered a judgment in excess of $5,000,000 against defendant.

Subsequently, on March 22, 1983, plaintiff instituted a contract action against defendant for services rendered. Nine months later, defendant filed an answer and a counterclaim for $5,000,000, alleging that plaintiff was liable for breach of contract, breach of fiduciary duties, disclosure of confidential information, negligence, and unjust enrichment.

Meanwhile, a state grand jury began an investigation of the allegations that defendant had tampered with the wells, and issued a subpoena to one of defendant's vice presidents, Joseph

Kolmer. On May 19, 1983, Kolmer invoked the attorney-client privilege before the grand jury. Consistent with that invocation, defendant, claiming a fifth amendment privilege against self-incrimination, refused to answer plaintiff's interrogatories or to produce its president, Phillip Meisel, for depositions. In particular, defendant refused to answer interrogatories pertaining to its counterclaim.[1] With that refusal, the parties em-

---

[1]The interrogatories as answered are:

13. State whether Philip Meisel, or any other agent, servant or employee of the defendant, had a telephone conversation with Murray D. Brochin, Esq., on or about June 11, 1981, relating to whether agents, servants or employees of the defendant had intentionally pumped water into the monitor well which the plaintiff had drilled on defendant's property for the purpose of testing procedures. If so, set forth the name of the agent, servant, or employee of the defendant who engaged in the telephone conversation with Murray D. Brochin, Esq., and state exactly what was stated by each party to the conversation.

Because of a pending grand jury investigation the defendant refuses to answer and claims priviledge [sic].

14. State whether any agent, servant or employee of the defendant intentionally pumped water into the monitor wells which the plaintiff drilled on the defendant's property for the purpose of conducting tests of aquifer and ground water conditions. If so,

(a) Set forth the name and address of the person who put the water into the monitor wells and the dates on which the water was put into the monitor wells.

See answer to No. 13.

(b) Set forth the name of the agent, servant or employee of the defendant that authorized the pumping of water into the monitor wells.

(c) State whether the defendant will contend at trial that, prior to June 11, 1981, any agent, servant or employee of the plaintiff had knowledge of the fact that a representative of the defendant had intentionally pumped water into the monitor. If so, set forth the facts that the defendant will rely upon at the time of trial to prove the aforesaid contention including but not limited to:

Yes. See previous answers

(i) The name of the agent, servant or employee of the plaintiff who had knowledge of such fact.

John Barone and Joseph Kolmer.

(ii) The date or dates upon which knowledge of such fact was acquired and the factual circumstances under which the knowledge of such fact was acquired. If knowledge of such fact was give [sic] by and/or confirmed by an agent, servant or employee of the defendant state each persons [sic] name and the date or dates on which he informed the plaintiff of the fact that water had been pumped into the monitor wells, and/or the dates on which he confirmed such fact. State whether the aforesaid information and/or confirmation was

barked upon a sea of motions, leading to the entry of the order dismissing the counterclaim.

Although defendant applied for a protective order staying discovery until the outcome of the grand jury proceedings, on February 21, 1984, the Law Division denied the application, ordered defendant to answer the interrogatories by March 11, 1984, and further ordered defendant to produce its president for depositions by March 31, 1984. A subsequent order of April 2, 1984, which extended the deadlines for answers to interrogatories, provided that if defendant failed to comply, the court would dismiss the answer and counterclaim and conduct a hearing on plaintiff's damages.

Defendant failed to comply with the April 2, 1984, order, and the Law Division conducted a proof hearing on June 15, 1984, after which it entered a judgment for plaintiff in the amount of $60,940.35 plus interest. That judgment, defendant's counsel informs us, has been satisfied.

Thereafter, on October 11, 1984, the Law Division entered another order denying defendant's application to reinstate the answer, entering default against defendant retroactively to June 15, 1984, and denying defendant's motion to vacate proofs. The court, however, granted defendant's motion to reinstate the counterclaim on condition that defendant supply certified answers to interrogatories within twenty days of September 26, 1984, and that it produce its president for depositions before October 30, 1984. Finally, the court ordered that discovery be sealed and disseminated only to the court and plaintiff's attorney.

---

in writing or oral. If in writing, annex a copy hereto. If oral, state the names of all persons who were present each time and exactly what was stated by each person present.

It is believed that the knowledge was acquired as early as April of 1981. The defendant reserves the right to supplement this answer upon plaintiff's production of documents.

Defendant failed to make discovery as directed by the October 11, 1984, order and, on February 1, 1985, on plaintiff's motion, the Law Division entered an order dismissing defendant's counterclaim. Unfortunately, however, the February order did not state whether the dismissal was with or without prejudice.

The Appellate Division affirmed the October 11, 1984, order directing defendant to make discovery, but concluded that the February 1, 1985, order dismissing the counterclaim was an adjudication on the merits under Rule 4:37–2(d) and constituted a dismissal with prejudice. The court, however, modified that order to a dismissal without prejudice.

Before us, plaintiff challenges the modification of the dismissal from one "with" to one "without" prejudice. Plaintiff contends that the transformation violates the entire controversy doctrine because it allows defendant to bring a related claim in a subsequent action. Defendant's counsel has advised us that since oral argument defendant has instituted a separate action against plaintiff asserting the same claims as those contained in the dismissed counterclaim. Counsel advises further that the indictment returned against defendant on June 6, 1986, was dismissed with prejudice on October 30, 1986.

## II

Underlying plaintiff's challenge to the Appellate Division's attempt to convert the dismissal of the counterclaim to one without prejudice is the assumption that the Law Division's February 1, 1985, order was with prejudice. Defendant contends, however, that under Rule 4:37–2(a) the February 1, 1985, order, which did not recite that it was "with prejudice," was "without prejudice" and, therefore, that the Appellate Division's purported modification was superfluous. We agree.

Rule 4:37–2(a) provides:

For Failure to Comply with Rule or Order. For failure of the plaintiff * * * to comply with * * * any order of the court, the court in its discretion may on

defendant's motion dismiss an action or any claim against him. Such dismissal shall be without prejudice unless otherwise specified in the order.

The sanctions of Rule 4:37–2(a), although expressed in terms of the "failure of the plaintiff," apply also to a counterclaimant. *R.* 4:37–3. Consequently, the dismissal of a counterclaim for failure to comply with a court order, like the dismissal of the complaint, unless otherwise specified in the order, constitutes a dismissal without prejudice. *See West Milford Township Bd. of Educ. v. Rockwell Mfg. Co.,* 173 *N.J.Super.* 506, 508 (Law Div.1980), certif. denied, 89 *N.J.* 419 (1982). Because the February 1, 1985, order, without otherwise specifying, dismissed defendant's counterclaim "for failure to comply with an Order" dated October 11, 1984, the dismissal was without prejudice.

■ That conclusion is consistent with the general principle that a dismissal with prejudice is a severe sanction that should be imposed sparingly and "only when no lesser sanction will erase the prejudice suffered by the non-delinquent party." *Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336, 345 (1984). The Appellate Division proceeded on the assumption that the February 1, 1985, order dismissing defendant's counterclaim was an adjudication on the merits under Rule 4:37–2(d) and, therefore, was with prejudice. A close reading, however, leads to the conclusion that Rule 4:37–2(d) does not apply. Rule 4:37–2(d) provides:

Dismissal with Prejudice; Exceptions. Unless the order of dismissal otherwise specifies, a dismissal under R. 4:37–2(b) or (c) and any dismissal not specifically provided by R. 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits.

Subsections (b) and (c) refer to involuntary dismissals at trial. The February 1, 1985, order, however, was not such a dismissal. It was not a dismissal upon completion of plaintiff's case, *R.* 4:37–2(b), or a dismissal of a claim for contribution, *R.* 4:37–2(c). Nor was it a "dismissal not specifically provided by R. 4:37." It was a dismissal for failure to comply with a court order and, therefore, was a dismissal without prejudice under Rule 4:37–2(a). The Appellate Division misperceived the Law Division's order to be with prejudice, and amended the dismissal to one

without prejudice. Thus, the court reached the right result for the wrong reasons.

## III

■ We turn now to the effect of the dismissal without prejudice on defendant's institution of an independent action asserting the same cause as was contained in the dismissed counterclaim. A dismissal without prejudice is not an adjudication on the merits and does not bar reinstitution of the same claim in a later action. *Malhame v. Borough of Demarest,* 174 *N.J.Super.* 28, 30–31 (App.Div.1980) (quoting *Christiansen v. Christiansen,* 46 *N.J.Super.* 101, 109 (App.Div.), certif. denied, 25 *N.J.* 56 (1957)); Pressler, *Current N.J. Court Rules, R.* 4:37–1 comment 1 at 851 (1987). Plaintiff contends, however, that the institution of a subsequent action violates the entire controversy doctrine. We disagree.

■ Underlying the entire controversy doctrine are the twin goals of efficient judicial administration and fairness to litigants. The doctrine recognizes that it is neither fair nor efficient to fragment a single controversy into separate actions. Such fragmentation can harass litigants, delay final adjudication, and waste judicial resources. *Crispin v. Volkswagenwerk, A.G., supra,* 96 *N.J.* at 350–52 (Handler, J., concurring). The roots of the entire controversy doctrine reach back to the procedural reforms contained in article VI, section III, paragraph 4 of the 1947 Constitution and related changes in the Rules of Civil Practice. As Justice Brennan explained, the purpose of that reform was to provide for "the just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants. It is a fundamental objective of this procedural reform to avoid the delay and wasteful expense of the multiplicity of litigation which results from the splitting of a controversy." *Ajamian v. Schlanger,* 14 *N.J.* 483, 485, *cert. denied,* 348 *U.S.* 835, 75 *S.Ct.* 58, 99 *L.Ed.* 659 (1954) (citations omitted). Consistent with that purpose, "the [entire controversy] doctrine as generally applied

requires 'that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding.' " *Crispin v. Volkswagenwerk, A.G., supra,* 96 *N.J.* at 348 (Handler, J., concurring) (quoting *William Blanchard Co. v. Beach Concrete Co., Inc.,* 150 *N.J.Super.* 277, 292 (App.Div.), certif. denied, 75 *N.J.* 528 (1977)). Under the doctrine, therefore, "a defendant failing to raise a germane counterclaim will be estopped from proceeding thereon in a subsequent separate action." Pressler, *Current N.J. Court Rules, supra, R.* 4:7–1 comment 1 at 712.

■ Since 1979, the entire controversy doctrine has been incorporated into Rule 4:27–1(b), which pertains to the mandatory joinder of claims:

> Each party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine.

Failure to comply with that Rule will preclude the assertion of the claim in a later action. *R.* 4:7–1. The result is that a party is required to assert in one action all claims arising from a single controversy. Hence, it is mandatory that a defendant assert a counterclaim based upon a breach of the contract that is the basis for the complaint. Accordingly, at the risk of being precluded in a later action, defendant here was obliged to assert its counterclaim for breach of contract and related matters against plaintiff. *See William Blanchard Co. v. Beach Concrete Co., Inc., supra,* 150 *N.J.Super.* at 294; *Leisure Technology v. Klingbeil,* 137 *N.J.Super.* 353, 358 (App.Div.1975).

■ To satisfy the doctrine, a party is obliged only to assert the claim. *See Falcone v. Middlesex Medical Soc'y,* 47 *N.J.* 92, 93 (1966) (claim must be "asserted" or "set forth"); *cf. Giambuttista v. Bradlees Inc.,* 130 *N.J.Super.* 381, 383 (1974) ("[i]f the [counter]claim had been set forth and filed with the answer, it would have been proper under R. 4:7–1"). The doctrine does not insulate the claimant from other provisions of the rules, such as those pertaining to discovery. Hence, the doctrine

neither precludes a court from dismissing the claim of a party who has failed to comply with an order nor obliges the court to permit such a claim to proceed to a final adjudication. Pursuant to Rule 4:37–2(a), a dismissal of a non-complying party does no violence to the entire controversy doctrine. *Crispin v. Volkswagenwerk, A.G., supra,* 96 *N.J.* at 354–55 (Handler, J., concurring). When, as here, the defendant refuses to obey a court order requiring compliance with discovery, the trial court may dismiss the defendant's counterclaim without prejudice. *See Kohn's Bakery, Inc. v. Terracciano,* 147 *N.J.Super.* 582, 584–85 (App.Div.1977) (citing *R.* 4:37–2(a)).

By asserting its counterclaim with its answer, defendant satisfied the entire controversy doctrine. Nonetheless, the Law Division, in the exercise of its discretion, retained the power to grant plaintiff's motion to dismiss the counterclaim for defendant's failure to comply with the earlier discovery order. Without the dismissal, plaintiff would have been forced to choose between defending the counterclaim without the benefit of discovery or deferring the adjudication of the complaint until the completion of the criminal proceedings against defendant. Although it may have been within the discretion of the Law Division to dismiss the counterclaim with prejudice, a dismissal without prejudice, such as was entered, is more consistent with the policy favoring the determination of claims on the merits.

Defendant also claims that the dismissal of its counterclaim constitutes a violation of its privilege against self-incrimination. Our recognition that the dismissal was "without prejudice" renders unnecessary detailed consideration of that contention. The dismissal left open to defendant the possibility of asserting its claim in an independent action, which defendant has instituted. Furthermore, as a corporation, defendant may not invoke the privilege as an excuse for failing to make discovery. *New Jersey Builders, Owners & Managers Ass'n v. Blair,* 60 *N.J.* 330, 340–41 (1972); *Board of Health, Weehawken Township v. New York Central R.R. Co.,* 10 *N.J.* 284, 289

(1952); *accord George Campbell Painting Corp. v. Reid*, 392 *U.S.* 286, 288–89, 88 *S.Ct.* 1978, 1980, 20 *L.Ed.*2d 1094, 1096–97 (1968). Even if it could claim the privilege, a corporate defendant remains subject to appropriate sanctions for non-compliance with the rules of practice. *Costanza, Jr. v. Costanza*, 66 *N.J.* 63, 66–68 (1974); *Mahne v. Mahne*, 66 *N.J.* 53, 55–56 (1974). Although the trial court could have imposed alternative sanctions such as staying discovery or precluding defendant from offering affirmative proof at trial, *see Whippany Paper Bd. Co. v. Alfano*, 176 *N.J.Super.* 363, 373–76 (App.Div.1980), the Law Division did not abuse its discretion in dismissing defendant's counterclaim without prejudice. *See Mahne v. Mahne, supra,* 66 *N.J.* at 62; *Shaw v. Riverdell*, 150 *N.J.Super.* 585, 592–93 (Law Div.1977) (citing *National Freight, Inc. v. Ostroff,* 133 *N.J.Super.* 554, 559 (Law Div.1975)) (defendant's claim of privilege on account of pending criminal action does not warrant a stay of discovery in a civil action); *cf. Whippany Paper Bd. Co. v. Alfano, supra,* 176 *N.J.Super.* at 375–76 (when defendant relies on privilege against self-incrimination to avoid discovery, court may strike answer and enter default judgment).

To conclude, the dismissal of the counterclaim, which did not otherwise specify, was without prejudice, *R.* 4:37–2(a), and the Law Division was well within its discretion in ordering the dismissal. Neither the entire controversy doctrine nor the mandatory joinder of claims, *R.* 4:27–1(b), bars defendant's later action based on the same claim. Our acknowledgment that defendant may proceed with that action does not reflect any view on the merits of the underlying claim.

As modified, the judgment of the Appellate Division is affirmed, and the matter is remanded to the Law Division.

*For affirmance as modified and remanded*—Chief Justice WILENTZ and Justices POLLOCK, CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.