

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-2004

# ITT Corp v. Intelnet Intl Corp

Precedential or Non-Precedential: Precedential

Docket No. 02-4035

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"ITT Corp v. Intelnet Intl Corp" (2004). *2004 Decisions.* Paper 740.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/740

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 02-4035 / 02-4205

———————

ITT CORPORATION;
ITT SHERATON CORPORATION;
STARWOOD HOTELS AND
RESORTS
WORLDWIDE, INC.

Appellants (No. 02-4035)

v.

INTELNET INTERNATIONAL
CORPORATION;
INTELNET SERVICES OF NORTH
AMERICA, INC.;
CONCIERGE PLUS;
INNTRAPORT INTERNATIONAL,
INC.;
INTELNET N.A., INC.;
INTELEPOWER N.A., INC.;
INTELECABLE N.A., INC.;
INTELEMEDIA N.A., INC.;
ASSOCIATED BUSINESS
TELEPHONE
SYSTEM CORP.;
A.B.T.S. INTERNATIONAL
CORPORATION;
DOMINIC DALIA;
MICHAEL DALIA;
CRAIG BRUNET;
JOHN DOES 1-10

Intelnet International Corporation;
Intelnet Services of North America,
Inc.;
Inntraport International, Inc.;
Intelnet N.A., Inc.;
Intelepower N.A., Inc.;
Intelemedia N.A., Inc.;
Associated Business Telephone
Systems Corp.;
A.B.T.S. International Corporation;
Michael Dalia;
Craig Brunet

Appellants (No. 02-4205)

———————

On Appeal from the
United States District Court
for the District of New Jersey
D.C. Civil Action No. 01-cv-05410
(Honorable Jerome B. Simandle)

———————

Argued December 11, 2003

———————

Before: AMBRO, FUENTES and
GARTH, Circuit Judges

(Opinion filed  April 26, 2004)

Edward J. Yodowitz, Esq.
Skadden, Arps, Slate, Meagher & Flom
Four Times Square
New York, NY 10036

Robert J. Del Tufo, Esq. (Argued)
Cynthia V. Fitzgerald, Esq.
Danielle A. Cutrona, Esq.
Skadden, Arps, Slate, Meagher & Flom
One Newark Center, 18th Floor
Newark, NJ   07102
        *Attorneys for Appellants/
        Cross-Appellees*

Arthur R. Miller, Esq. (Argued)
Harvard Law School
1755 Massachusetts Avenue
Cambridge, MA 02138

Jerome M. Congress, Esq.
Milberg, Weiss, Bershad, Hynes & Lerach
One Pennsylvania Plaza
48th Floor
New York, NY   10119

Carl D. Poplar, Esq.
Poplar & Eastlack
1010 Kings Highway South
Building Two
Cherry Hill, NJ 08034
        *Attorneys for Appellees/*
        *Cross-Appellants*

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Plaintiffs ITT Corporation ("ITT Corp."), ITT Sheraton Corporation ("Sheraton") and Starwood Hotels and Resorts Worldwide, Inc. ("Starwood") appeal the District Court's dismissal of their Racketeer Influenced and Corrupt Organization Act ("RICO") action against various Intelnet entities[1] for failure to

---

[1]Unless the context requires otherwise, for convenience purposes we use "ITT" when referring to any ITT-related entity or entities on the one hand, and "Intelnet" when referring to any Intelnet-related

comply with the applicable statute of limitations. ITT's RICO claims allege that Intelnet has engaged in a pattern of entering into contracts it cannot perform with the intent of seizing upon its customers' purported breaches to extort settlements by threats of vexatious litigation. Prior to initiating its federal action, ITT raised substantially identical claims in a state court case by means of a motion to amend its pleadings. The state court denied the motion.

On cross-appeal, Intelnet argues that the District Court erred in holding that it had jurisdiction, as the *Rooker-Feldman* doctrine "preclude[s] lower federal court jurisdiction over claims that were actually litigated or 'inextricably intertwined' with adjudication by a state's courts." *Parkview Assocs. P'shp. v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000) (quoting *Gulla v. North Strabane Township*, 146 F.3d 168, 171 (3d Cir. 1998)). We agree with Intelnet that *Rooker-Feldman* bars federal jurisdiction in this case.

**I. Factual and Procedural History**

ITT Corp. owns and operates hotels and casinos.[2] Its affiliates include Sheraton and Caesar's World, Inc. ("Caesar's"). Intelnet International Corp. ("Intelnet International"), Intelnet Services of North America, Inc. ("Intelnet Services"), INNtraport International, Inc., Intelecable N.A., Inc., and Intelemedia

---

entity or entities on the other.

[2]In February 1998, ITT Corp. became a wholly owned subsidiary of Starwood.

N.A., Inc. purchase telephone services in volume from major carriers and resell those services to hotels and hotel companies, as well as residential customers, at a reduced rate.

In 1996, ITT and Intelnet entered into a series of contracts for Intelnet's provision of telecommunications and media services to ITT's hotels and casinos. Intelnet represented that it would provide to ITT a proprietary system called the "Intelnet Platform," which it claimed would provide enhanced services such as high-speed internet access and video-on-demand. The principal contracts were the C+ Operating Agreement ("C+ Agreement"), dated July 3, 1996, and the Amended and Restated Master Promotional Agreement ("RMPA"), dated October 3, 1996.

The C+ Agreement formed a limited liability company, Concierge Plus, L.L.C., through which Intelnet International and ITT Intelnet Investment Corp., a wholly owned subsidiary of ITT Corp., would share future profits and Intelnet International would provide telecommunications products and services. But Concierge Plus never provided any of the promised services. The RMPA, a contract between ITT Corp. and Intelnet Services, gave the latter the exclusive right to provide certain enhanced telecommunications products and services, including high-speed internet access, to the offices, hotels, and casinos of ITT Corp. and several of its affiliates.

In December 1997 Intelnet filed an action in New Jersey state court against ITT for breach of contract.[3] Intelnet alleged that in early 1997 Sheraton began working with other companies, such as Microsoft Corporation, to develop Sheraton.Net, which would service Sheraton hotel guests in Asia. Intelnet argued that the negotiations between Sheraton and Microsoft breached the C+ Agreement and the RMPA.[4]

In February 1998 ITT filed various state law counterclaims against Intelnet, including fraud, misrepresentation, and breach of contract. Some time later, based purportedly upon information obtained through discovery in the New Jersey state court action and through its independent investigation, ITT filed a motion to amend its pleadings to add counterclaims against Intelnet under the federal and New Jersey RICO statutes, 18 U.S.C. § 1962(c) & (d) and N.J. Stat. Ann. § 2C:41-2(c) & (d). The proposed counterclaims asserted that Intelnet had engaged in a pattern of racketeering activity by entering into contracts, knowing that it was incapable of performing them, with the intent of extorting settlements from its customers by

[3]Intelnet initially named as defendants only ITT Corp. and Sheraton. The complaint was later amended to include Starwood as well as various affiliates.

[4]According to ITT, Intelnet had advised ITT that it could not perform in Asia. ITT also notes that Sheraton.Net was never implemented. We need not examine the viability of Intelnet's claim for breach of contract, which is irrelevant to our disposition of this appeal.

threatening to entangle them in extensive and costly litigation based on their purported breaches. The State Court, per Judge John A. Fratto, denied the motion to amend. Judge Fratto explained:

> The rule says that amendments to pleadings should be freely given. The rule provides that there be a motion in order to obtain the amendment to the pleading, so it does not mean that you are automatically entitled to amend the pleadings at any time. . . . Whether it be RICO or some other cause of action, there are judges . . . that will allow all amendments on the theory that they can be dealt with later on when the other side makes a motion for summary judgment, a motion to dismiss[], motion to strike the pleadings. That has not been my procedure. . . .
>
> I've looked at the proposed amendments . . . and at best it seems that the allegation is . . . that the plaintiffs were unable to fulfill their contract, and every time they wrote a letter or sent a wire, knowing that they were unable to fulfill their contract, the[y] committed a RICO violation.
>
> I don't think RICO is or was

intended to encompass breaches of contract, even breaches of contract that involve $800 million. . . . And, I don't see sufficient in the proposed complaint that I should permit after three and a half years an amendment to an answer to raise a RICO claim with all of its concomitant results[;] so the motion to amend the answer will be denied.

Judge Fratto's accompanying Order did not specify whether ITT's motion was denied with or without prejudice. ITT suggests that the motion was denied without prejudice because it was filed three and one half years after the complaint. Intelnet, by contrast, contends that the state court also rejected the motion on the merits and therefore it was with prejudice.

ITT filed this action in the United States District Court for the District of New Jersey in November 2001. Its complaint states that "it only was after discovery commenced in the New Jersey Litigation . . . that the ITT Parties discovered that the Intelnet Parties had no ability or intent to perform under Intelnet's contract with the ITT Parties, and further, that the Intelnet parties had a history of engaging in this pattern of fraudulent conduct and racketeering activity." ITT also alleges a variety of false representations by Intelnet regarding its capabilities, describes evidence of Intelnet's "extortionate objectives," and

4

lists numerous acts of alleged mail and wire fraud. In essence, ITT's federal action raises the same claims it sought to introduce in the New Jersey case before Judge Fratto.[5]

In February 2002, Intelnet filed a motion to dismiss ITT's federal complaint based on the four-year statute of limitations. The District Court granted Intelnet's motion. In so doing, the Court applied the two-step "injury discovery" rule set out in *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 250 (3d Cir. 2001). It concluded that Intelnet had met

its burden of demonstrating the existence of "storm warnings" more than four years prior to the initiation of the federal action (specifically, as early as January 1997). It further determined that ITT had failed to show that it was unable to discover its injuries, despite exercising due diligence, within the applicable period.

ITT appeals on the bases that: (1) the District Court misconstrued the nature of its RICO claims, which were founded on extortion through threat of litigation rather than fraudulent inducement; (2) the District Court relied on information extrinsic to the pleadings, thereby converting Intelnet's motion to dismiss into a motion for summary judgment without providing notice of conversion; and (3) ITT did in fact act with reasonable diligence subsequent to the "storm warnings" cited by the District Court. Intelnet cross-appeals, alleging that the District Court lacked jurisdiction in light of the *Rooker-Feldman* doctrine or should have abstained from exercising jurisdiction under the *Colorado River* doctrine.[6]

---

[5]To illustrate, the federal complaint of ITT alleges that: (1) Intelnet had "an extensive history of entangling their customers and vendors in contracts that the Intelnet Companies could not perform, with the ultimate goal of seizing upon a pretextual breach of contract by the contracting party to extort a settlement payment from them under the threat of protracted and expensive litigation," (2) that the strategy of extortion was integral to Intelnet's business strategy, and (3) that ITT, through discovery, had identified many similar lawsuits. In its prior state court counterclaim, ITT alleged that "the Intelnet parties used the U.S. Mail as a critical part of their scheme to defraud the ITT parties, all in order to . . . wait until the Intelnet parties could seize upon some pretext to declare that the ITT parties had breached their agreements with Intelnet and then sue the ITT parties for an extraordinary sum of money (hundreds of millions of dollars) unless the ITT parties paid the Intelnet [sic] exorbitant sums."

[6]While "[i]t is axiomatic that the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them' by Congress," *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)), the *Colorado River* doctrine permits a federal court to refrain from exercising its jurisdiction when the litigation would be duplicative of a concurrent foreign or state court proceeding. Because the lower federal

Intelnet also argues that ITT has failed to plead its RICO claims with sufficient particularity. As the *Rooker-Feldman* doctrine bars federal jurisdiction in this case, we go no further.

## II. Discussion

### A. Rooker-Feldman Doctrine as Interpreted in the Third Circuit

Our Court's boundaries for the *Rooker-Feldman* doctrine are pinched indeed. *See, e.g.*, *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 326 (3d Cir. 2000). Nonetheless, the facts of this case point to its application here.

The *Rooker-Feldman* doctrine bars federal jurisdiction under two circumstances: if the claim was "actually litigated" in state court or if the claim is "inextricably intertwined" with the state adjudication. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003); *Parkview Assocs.*, 225 F.3d at 325.[7] Our discussion examines whether a District Court judgment in favor of ITT on the RICO claims would be inextricably intertwined with the state court litigation. Only one prong of the test need be

---

courts lack jurisdiction in this case under the *Rooker-Feldman* doctrine, we need not address whether abstention would be appropriate.

[7]*Habeas corpus* petitions are, of course, an exception to the *Rooker-Feldman* jurisdictional bar. *Blake v. Papadakos*, 953 F.2d 68, 72 n.2 (3d Cir. 1992) (quoting *Sumner v. Mata*, 449 U.S. 539, 543-44 (1981)).

satisfied to trigger *Rooker-Feldman*, and we struggle to conjure a scenario in which a claim would be "actually litigated" by a state court and yet federal litigation of the same claim would not be "inextricably intertwined" with the state court judgment.[8] The "actually litigated" test is

---

[8]In *Desi's Pizza*, we noted the factors for determining whether an issue was "actually litigated" by the state courts: a plaintiff must present its federal claims to the state court, and the state court must decide those claims. *Id.* at 419. Ordinarily, it will be more difficult to demonstrate that a claim was "actually litigated" than to show that the federal claim is "inextricably intertwined" with the state court judgment. The former requires that the state court has considered and decided precisely the same claim that the plaintiff has presented in the federal court. Conversely, two claims may proceed on different theories or involve different parties and yet be inextricably intertwined if the District Court's judgment would "prevent a state court from enforcing its orders." *Id*. at 422.

The actually litigated prong is principally useful where the claims before the state and federal courts are in all respects identical. In such cases, the straightforward application of the "actually litigated" test avoids the more complicated "inextricably intertwined" inquiry. *See, e.g.*, *Saudi Basic Indus. Corp. v. Exxon Corp.*, No. 02-2130, ___ F.3d ___ (3d Cir. 2004).

a recent development unique to our Court,[9] and it is potentially misleading in this case because of its close relationship to the concepts of claim and issue preclusion. *See, e.g.*, *Ivy Club v. Edwards*, 943 F.2d 270, 294 (3d Cir. 1991) ("A party is precluded from litigating in a subsequent proceeding both claims that it actually litigated and claims that it could have litigated in an earlier proceeding.") (citation omitted)). Whereas the term "inextricably intertwined" has been integral to *Rooker-Feldman* doctrine since its inception, *Feldman*, 460 U.S. at 486, the term "actually litigated" derives from the preclusion context.[10]

State and federal claims are inextricably intertwined "(1) 'when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered' [or][11] (2) when 'the federal court must . . . take action that would render [the state court's] judgment ineffectual.'" *Desi's Pizza*, 321 F.3d at 421 (quoting *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS*, 75 F.3d at 840 (quoting *Charchenkov v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

---

[9]In *Parkview Associates*, 225 F.3d at 325, we briefly inquired whether the state court had "actually litigated" the claims at issue. We are not aware of the term's use in any prior discussion by our Court of the *Rooker-Feldman* doctrine. Other courts have occasionally invoked *Rooker-Feldman* and the "actually litigated" test in the same breath. *See, e.g.*, *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (noting that "[i]n addition to claims that were actually litigated in state court, the *Rooker-Feldman* doctrine bars lower federal courts from exercising jurisdiction over claims that are 'inextricably intertwined' with state court determinations," but discussing only the latter). To our knowledge, however, none has established a formal "actually litigated" alternative under the *Rooker-Feldman* doctrine.

[10]The Restatement (Second) of Judgments, § 27, defines issue preclusion

with reference to actual litigation: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Comment d. to § 27 defines the term "actually litigated" for preclusion purposes: "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated."

[11]The passage in *Desi's Pizza* reads "and" rather than "or." The Court, however, considered the two tests in the alternative.

7

In assessing whether the claims here are inextricably intertwined, we must resolve whether the state court decided ITT's RICO claims on the merits. If we conclude that Judge Fratto did not decide (or should not have decided) the merits of ITT's RICO claims, then federal judgment for ITT would neither render the state court's remaining judgment—namely, the denial of the motion to amend based on balancing the sufficiency of the proposed claim with ITT's delay in filing[12]—necessarily erroneous nor ineffectual. *Gulla v. North Strabane Township*, 146 F.3d 168, 172–73 (3d Cir. 1998). Conversely, if we conclude that the state court did resolve the claims on the merits, then the state and federal claims would be "inextricably intertwined" (as well as "actually litigated"). A contrary decision by a federal court on an issue resolved on the merits by a state court is precisely the brand of federal appellate review that *Rooker-Feldman* is intended to prevent.

**B. What Did the State Court Hold and Did It Intend That Holding To Be on the Merits?**

"[T]he first step in a *Rooker-Feldman* analysis is to determine exactly what the state court held." *Gulla*, 146 F.3d at 171 (internal quotation omitted). Unfortunately, the order denying ITT's motion for leave to file its amended counterclaims is of limited usefulness on this score. Thus we devote substantial attention to the transcript of the motion hearing before Judge Fratto.

There can be little doubt that ITT presented its RICO claims to the state court. In its "First Amended Answers and First Amended Counterclaims," ITT devoted more than fifty pages to its state and federal RICO claims. In denying the motion to amend, Judge Fratto explicitly addressed both the substantive allegations ("I don't think RICO is or was intended to encompass breaches of contract") *and* ITT's delay in filing its motion ("And, I don't see sufficient in the proposed complaint that I should permit after three and a half years an amendment").[13] He differentiated himself from those judges who "allow all amendments on the theory that they can be dealt with later on." In short, Judge Fratto intended to dispose of the motion on the merits.[14]

---

[12]*See infra* note 13.

---

[13]Arguably, even the language pertaining to delay reflects a judgment on the merits. Judge Fratto did not simply deny the amendment based on delay. Rather, he emphasized that the proposed complaint was insufficient to warrant a late amendment. Of course, as discussed below, Judge Fratto's intent to dispose of the amendment on the merits will not alone trigger the *Rooker-Feldman* doctrine; if he *should* not have reached the merits, *Rooker-Feldman* does not apply.

[14]Whether Judge Fratto's conclusion is correct as a matter of federal law is, of course, irrelevant for *Rooker-Feldman* purposes. The underlying rationale of the *Rooker-Feldman* doctrine is to prevent the lower federal courts from reviewing state court decisions in an appellate capacity.

In addition to the statements made by Judge Fratto, comments made by counsel at the motion hearing support this view. For example, counsel for ITT argued that because it needed to develop the facts, it was entitled to discovery. He noted that, if ITT were permitted to amend its pleadings, Intelnet could "bring [a] multiplicity of summary and partial summary judgment motions." ITT would then bear the burden of demonstrating that "a reasonable juror could conclude from the activities and facts deduced that litigation, both in this case and in other cases, was entered into with the absolute understanding by the plaintiffs that it was spurious and was done simply as a method of extorting goods or services." Implicit in this line of reasoning is the possibility that Judge Fratto could dismiss the amendment on legal grounds. Significantly, ITT's counsel referenced Intelnet's argument "that we are *precluded as a matter of law* this morning from such allegations" (emphasis added).

From this we glean that ITT recognized that denial of the amendment on the merits was possible. Moreover, counsel for Intelnet clearly promoted the position that ITT could not make out a RICO claim based on extortionate litigation. He referenced Intelnet's argument "that the commencement of a lawsuit . . . does not in any way arguably constitute RICO *as a matter of law*" (emphasis added). He deemed it unnecessary to "get into the facts . . . at this point in time." There was virtually no discussion before Judge Fratto of the timeliness of ITT's motion to amend. Instead, oral argument focused almost

exclusively on the viability of the claims.

While Judge Fratto's reference to the merits in his final disposition of the motion was limited, a state court's brevity does not prevent application of *Rooker-Feldman*. *Gulla*, 146 F.3d at 172 ("If a state court considers and rejects a constitutional claim on the merits, a paucity of explicit analysis in the court's opinion will not strip the holding of its validity for purposes of *Rooker-Feldman*'s jurisdictional bar.").

## C. Would New Jersey Law Regard the State Court's Judgment As Properly on the Merits?

Judge Fratto's intent alone, however, will not support application of *Rooker-Feldman*. ITT might avoid application of the doctrine if it can establish that (1) Judge Fratto's denial of the motion to amend would not be recognized as an adjudication on the merits under New Jersey law (and therefore does not constitute a state court judgment for *Rooker-Feldman* purposes), or (2) Judge Fratto *should not* have considered the merits of the amendment under New Jersey law. We consider these issues in turn.

### 1. Is the Denial of a Motion to Amend That Does Not Specify Whether It Is with Prejudice Nonetheless a Decision on the Merits Under New Jersey Law?

The first potential argument for evading *Rooker-Feldman* is that Judge Fratto's order denying ITT's motion to

amend would not be regarded as deciding the merits under state law. ITT suggests that an order denying a motion to amend is without prejudice, and thereby not on the merits, in the absence of explicit language to the contrary. We conclude otherwise.

If the state court's denial of ITT's motion to amend its pleadings was "with prejudice," and therefore on the merits, the *Rooker-Feldman* doctrine precludes ITT from filing substantially the same claims in the federal courts by withholding jurisdiction from those courts. New Jersey case law does not address explicitly whether a denial of a motion to amend is with prejudice when the judgment does not so specify. We resolve the question by deductive reasoning based on the following propositions.

First, "[o]bjection to the filing of an amended complaint on the ground that it fails to state a cause of action should be determined by the same standard applicable to a motion to dismiss. . . ." *Interchange State Bank v. Rinaldi*, 696 A.2d 744, 752 (N.J. App. Div. 1997).

Second, under New Jersey law an order granting a motion to dismiss that does not state whether it is with prejudice is "on the merits" except under limited circumstances not applicable here. New Jersey Rule 4:37-2(d) provides: "Unless the order of dismissal otherwise specifies, a dismissal under R. 4:37-2(b) or (c) and any dismissal not specifically provided for by R. 4:37, other than a dismissal for lack of jurisdiction, operate[] as . . . adjudication[s] on the merits." Rule 4:37-2(a) carves out another exception for

disciplinary dismissals.[15] Thus a dismissal that is not jurisdictional or disciplinary is on the merits.

Reviewing the first two predicates, an objection to a motion to amend for failure to state a cause of action is treated like a motion to dismiss, and a motion to dismiss is governed by a certain set of rules—namely, the dismissal is on the merits unless (1) it states that it is without prejudice or (2) it is jurisdictional or disciplinary. We may conclude that denial of an amendment for failure to state a cause of action is governed by the same set of rules.[16] Therefore, if the order denying

_____

[15]That rule provides: "For failure of the plaintiff to cause a summons to issue within 15 days from the date of the Track Assignment Notice or to comply with these rules or any order of court, the court in its discretion may on defendant's motion dismiss an action or any claim against the defendant. Such a dismissal shall be without prejudice unless otherwise specified in the order." While ITT seeks to apply the exception to this case, no basis exists to do so. Rule 4:37-2(a) extends only to the dismissal of a claim as a court-imposed *sanction*, a principle acknowledged by ITT in its own letter brief. *See, e.g., Woodward-Clyde Consultants v. Chem. & Pollution Scis.*, 523 A.2d 131, 134 (1987); *Zaccardi v. Becker*, 440 A.2d 1329, 1333 (1982).

[16]Our reasoning approximates what in logic is termed a "hypothetical syllogism": if A implies B, and B implies C, then A implies C. *See* Ruggero J. Aldisert, *Logic*

the amendment is silent as to its prejudicial value, the denial is on the merits unless it is jurisdictional or disciplinary. As we explain in the next section, Judge Fratto denied ITT's amendment because it failed to state a claim as a matter of law. His order did not specify whether it was with prejudice, but neither was it jurisdictional or disciplinary. It thus qualifies under New Jersey law as an "adjudication on the merits."[17]

---

*for Lawyers: A Guide to Clear Legal Thinking* 159 & n.7 (3d ed. 1997).

[17]New Jersey case law explaining the preclusive effect of a dismissal for failure to state a claim is somewhat confusing. Even if we concluded that Judge Fratto's judgment was without prejudice, it might still be on the merits. While a dismissal with prejudice clearly constitutes an adjudication on the merits, a dismissal without prejudice only "indicates," as a general matter, that there has been no adjudication on the merits of the claim. *Velasquez v. Franz*, 589 A.2d 143, 148 (N.J. 1991); *Cornblatt v. Barow*, 708 A.2d 401, 413 (N.J. 1998).

Per New Jersey's Supreme Court in *Woodward-Clyde*, 523 A.2d at 135, "[a] dismissal without prejudice is not an adjudication on the merits and does not bar reinstitution of the same claim in a later action." Yet in *Zaccardi v. Becker*, 440 A.2d 1329, 1333 (N.J. 1982), the same Court implied that a dismissal without prejudice of a complaint may later be a basis for dismissing a subsequently filed complaint. The Court attempted to resolve these tensions in *Cornblatt*, 708 A.2d at 415, suggesting that, while it may be without prejudice, dismissal for failure to state a claim is nonetheless "an adjudication on the merits entitled to *res judicata* effect." Moreover, in *Mystic Isle Development Corp. v. Perskie & Nehmad*, 662 A.2d 523, 534 (N.J. 1995), the Court emphasized that *Woodward-Clyde* involved a defendant whose counterclaim was dismissed without prejudice for failure to comply with a discovery order—an adjudication wholly unrelated to the merits.

Whether a claim is dismissed on factual or legal grounds is relevant to its preclusive effect. For example, the New Jersey Supreme Court has cautioned that applications for dismissal under Rule 4:6-2(e) for failure of a complaint to state a claim "should be granted in only the rarest of instances. If a complaint must be dismissed after it has been accorded . . . meticulous and indulgent examination, then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 48 (N.J. 1989). This principle, however, while framed in general terms, is addressed to the "sufficiency of *facts* alleged in a complaint," *id*. at 34. (emphasis added), and has little, if any, bearing on pure determinations of law. As we conclude in the next section that Judge Fratto denied ITT's proposed amendments on legal grounds, it follows that a subsequent suit on the same legal theory would be barred.

**2. Should the State Court Have Refrained from Considering the Merits of the Proposed Amended Complaint?**

We have concluded that Judge Fratto intended to dispose of ITT's proposed amendments on the merits, and that a judgment by the state court on substantive grounds triggers *Rooker-Feldman* regardless whether it is labeled "with prejudice." These conclusions do not, however, get Intelnet home. In *Gulla*, we held that the District Court had jurisdiction to hear a claim addressed by the state court because the latter, though it purported to decide the merits of the plaintiff's claims, should not have done so under Pennsylvania law. *Gulla*, 146 F.3d at 172 ("Under Pennsylvania law, the court could not resolve the merits of the [plaintiffs'] claims if they lack standing to bring their suit."). Judge Fratto's denial of the proposed amendment precludes federal jurisdiction over ITT's RICO

We need not resolve these nuances of New Jersey law because we have determined that ITT's state and federal claims are substantially the same. Consequently, under New Jersey preclusion law, a second action would be barred regardless whether Judge Fratto previously denied them on factual or legal grounds and regardless whether the dismissal was with prejudice. For even a judgment that is without prejudice has preclusive effect with respect to a "subsequent suit between the same parties, asserting the same claims, based on the same facts in state court." *Velasquez*, 589 A.2d at 144.

claims only if state law authorized him to decide the motion on the merits. Accordingly, we turn yet again to New Jersey law.

New Jersey Rule 4:9-1 provides that motions for leave to amend "shall be freely given in the interest of justice." A court nonetheless retains discretion to deny an amendment under appropriate circumstances. *Kernan v. One Washington Park Urban Renewal Assocs.*, 713 A.2d 411, 421 (N.J. 1998). ITT points to a substantial body of New Jersey case law addressing whether a court, in determining whether to grant a motion to amend, may consider the merits of the amendment. *See, e.g.*, *Hansen v. Hansen*, 770 A.2d 1278, 1286 (N.J. Super. Ct. App. Div. 2001); *Interchange State Bank v. Rinaldi*, 696 A.2d 744, 752 (N.J. Super. Ct. App. Div. 1997); *City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990). These cases do indeed limit a court's freedom to consider substantive issues in ruling on a motion to amend. *See, e.g.*, *Rinaldi*, 696 A.2d at 752 (stating that a motion for leave to amend should ordinarily be decided "without consideration of the ultimate merits of the amendment").

Nonetheless, New Jersey case law is explicit that there are no firm rules prohibiting consideration of the merits in these cases. "[C]ourts are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law. In other words, there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted." *Rinaldi*, 696

A.2d at 752 (quoting *Mustilli v. Mustilli*, 681 A.2d 650 (N.J. Super. Ct. Ch. Div. 1995)). Denial of an amendment for failure to state a claim should be examined under the standard applicable to a motion to dismiss under New Jersey Rule 4:6-2(e). See *Maxim Sewerage Corp. v. Monmouth Ridings*, 640 A.2d 1216, 1219 (N.J. Super. Ct. Law Div. 1993) (citing *Banks v. Wolk*, 918 F.2d 418 (3d Cir. 1990)), which "requires treating all the allegations of the pleading as true, and considering only whether those allegations are legally sufficient to establish the necessary elements of the claimed cause of action."

It is in this context that our earlier examination of whether Judge Fratto denied ITT's motion to amend its counterclaims for legal reasons becomes important. As already noted, there is little doubt that he denied ITT's proposed amendment as a matter of law. After examining ITT's lengthy allegations and hearing counsel at argument, Judge Fratto concluded, "[A]t best it seems that the allegation is . . . that the plaintiffs were unable to fulfill their contract, and every time they wrote a letter or sent a wire, knowing that they were unable to fulfill their contract, the[y] committed a RICO violation." He continued, "I don't think RICO is or was intended to encompass breaches of contract, even breaches of contract that involve $800 million."[18] He

---

[18]Judge Fratto appears subtly to have misstated the theory advanced by ITT in federal court—that Intelnet violated RICO by seizing on a pretextual breach to threaten litigation. Based on this

explicitly construed the claims in a light most favorable to the moving party ("at best it seems"). Judge Fratto denied the amendment based on his conviction that

---

language, one might argue that the state court did not "actually litigate" the claim advanced by ITT in federal court because Judge Fratto misconstrued ITT's allegations. We hesitate to parse the language in this fashion, given that ITT explained its RICO theory to the state court in the same terms as in the federal litigation. We construe Judge Fratto's reference to "breaches of contract" as convenient shorthand for the alleged scheme. According to ITT, Intelnet used the United States mail (a) fraudulently to induce the ITT parties to execute their agreements, (b) consistently to postpone performance while concealing its inability to perform, with the purpose (c) of seizing upon pretexts to declare that ITT had breached the agreements and extorting settlements. There was extensive discussion at the motion hearing as to what these allegations entailed, and Judge Fratto likely believed his oral summation was adequate against that backdrop.

In any case, this strategy is unavailing because it runs up against the "inextricably intertwined" prong of the *Rooker-Feldman* doctrine. If Judge Fratto denied ITT's proposed amendment because he concluded, whatever his reasoning, that it failed to state a claim upon which relief might be granted, a federal judgment permitting a substantially identical claim to proceed would render the state court decision necessarily erroneous.

13

ITT had failed to state a claim as a matter of law, and he had the discretion to do so under New Jersey law.[19]

---

[19]ITT raises a final objection to *Rooker-Feldman* based on the non-identity of the parties in the state versus federal actions. (Various Intelnet affiliates are defendants in the federal case but were not parties in the New Jersey action, and ITT affiliates that were named defendants in state court are not plaintiffs in the federal action.) The argument finds some support in our decision in *Valenti v. Mitchell*, 962 F.2d 288 (3d Cir. 1992). In that case, we declined to apply *Rooker-Feldman* against plaintiffs who were not parties to the state action. Relying on the "close affinity" between the *Rooker-Feldman* doctrine and claim and issue preclusion, we explained that "[w]e [had] found no authority which would extend the *Rooker-Feldman* doctrine to persons not parties to the proceedings before the state . . . court." *Id.* at 297.

However, the "close affinity" between the *Rooker-Feldman* and preclusion doctrines that supported federal jurisdiction in *Mitchell* undercuts ITT's theory that *Rooker-Feldman* does not apply in this case. We did not decide in *Valenti* whether the *Rooker-Feldman* jurisdictional bar can be asserted by a non-party to the state court action *against* a party to both proceedings. In the preclusion context, however, the rule is quite clear. While *res judicata* may require total identity of the parties, collateral estoppel usually requires only that the party *against* whom preclusion is being sought participated in the prior proceeding. *See, e.g., Dici v. Pennsylvania,* 91 F.3d 542, 548 (3d Cir. 1996).

We see no reason why a different rule should govern *Rooker-Feldman*. On several occasions, to be sure, we have declined to apply *Rooker-Feldman* to bar a federal claim by a non-party to a state action. For example, in *Marks v. Stinson*, 19 F.3d 873, 885 n.11 (3d Cir. 1994), we held that "*Rooker-Feldman* [does] not bar the district court from hearing the claims of the [] plaintiffs because they were not parties to any of the state court proceedings on the matter." Similarly, in *National Railroad Passenger Corp. v. Pennsylvania Public Utility Commission*, 342 F.3d 242, 257 (3d Cir. 2003), we noted that "[a] state court order to which [the plaintiff] was not a party cannot be the basis to deny [the plaintiff] its statutory right to a federal forum." *Id.* But we have never deemed *Rooker-Feldman* inapplicable based on the non-participation in state court of a party asserting the jurisdictional bar. On the contrary, we have applied *Rooker-Feldman* to bar a federal claim by a plaintiff whose state proceeding was non-adversarial (in other words, there was apparently no defendant at the state level). The parties to the federal action in that case were necessarily non-identical. *See E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir. 1997).

In this case, ITT lost in state court: Judge Fratto denied its motion to amend its pleadings. Now, after raising the same claims in federal court, it asserts that jurisdiction is appropriate because it has named defendants who were not parties to

14

### III. Conclusion

We summarize as follows. ITT presented its RICO claims to the state court in the form of a proposed pleading amendment adding counterclaims. New Jersey law permits a state court to deny an amendment on procedural grounds (such as inordinate delay in filing) *or* because the amendment fails to state a claim. The latter is treated like a motion to dismiss for failure to state a claim and is a permissible decision on the merits under state law and thus for *Rooker-Feldman* purposes. Judge Fratto denied the amendment at least in part on the ground that it failed, as a matter of law, to state a claim upon which relief can be granted. In this context, the *Rooker-Feldman* doctrine bars federal

jurisdiction in this case. Accordingly, we vacate the decision of the District Court and dismiss for lack of jurisdiction.

---

the state court action. We will not permit a party to end-run the *Rooker-Feldman* doctrine in this manner. The opinion of our Court in *Saudi Basic Industries Corp. v. Exxon Corp.*, No. 02-2130, ___ F.3d ___, ___ (3d Cir. 2004), borrowing from preclusion concepts, concluded that "[c]laims and issues decided against an entity bind also its parties in privity" for *Rooker-Feldman* purposes. Per *Saudi Basic,* ITT may not evade *Rooker-Feldman*'s grasp by adding affiliates as plaintiffs in the federal suit. In a similar vein, we now hold that *Rooker-Feldman* bars jurisdiction where, as here, related but non-identical defendants (the Intelnet affiliates) were drawn into the federal litigation by the parties (ITT Corp. and its affiliates) against whom the state court action was decided.

15